**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 9, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STEPHAN T. BISHOP,

Defendant-Appellant.

No. 05-3173

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 04-CR-20118-01-JWL)**

Terra D. Morehead, Assistant United States Attorney, Kansas City, Kansas (Eric F. Melgren, United States Attorney, with her on the brief) for Plaintiff-Appellee United States of America.

James T. George, Lawrence, Kansas, for Defendant-Appellant Stephan T. Bishop.

Before **HENRY**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

**HENRY,** Circuit Judge.

Stephan T. Bishop appeals his convictions related to possession of a firearm and ammunition by a felon, and witness intimidation. He argues (1) that the admission of certain evidence, coupled with the jury instructions regarding the

felon in possession charge, constructively amended the indictment against him in violation of the Fifth and Sixth Amendments; (2) that we should reverse his convictions related to witness intimidation because the district court should have suppressed certain email evidence due to the government's misconduct and alleged violation of the Federal Rules of Criminal Procedure; and (3) that his 78-month sentence is unreasonable.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude that any constructive amendment of the indictment constituted harmless error, that the district court was within its discretion to admit the email evidence, and that Mr. Bishop's sentence is reasonable.  We therefore affirm his convictions and sentence.

## I. BACKGROUND

In April 2004, a police officer noticed Mr. Bishop and his girlfriend, Emily Black, acting suspiciously at a gas station that was often used for drug transactions.  The officer approached them, and asked to pat down Mr. Bishop.  Mr. Bishop agreed, and the search revealed a knife on his person.  During the encounter, the officer also observed several disposable syringes in Ms. Black's purse and smelled marijuana coming from Ms. Black's vehicle, which was parked at the gas station.  The officer decided to search the car, and found a Hi-Point 9 mm pistol with ammunition in it under the front passenger seat.  When he searched Mr. Bishop's person again, the police officer discovered a .38 caliber

2

bullet in Mr. Bishop's pocket.

Sometime after his arrest, in June through August 2004, Mr. Bishop began sending emails to Ms. Black, threatening her and her family if she testified against him. He attempted to convince her to tell the police or the jury that the firearm found in her car belonged to her. As trial neared, Mr. Bishop's emails became increasingly vulgar and threatening. He also made threatening phone calls to Ms. Black, which she retained and recorded.

In an indictment returned in September 2004, a grand jury charged Mr. Bishop with seven counts: Count one, being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2); Counts two through four, witness intimidation, in violation of 18 U.S.C. § 1512(b)(1); and Counts five through seven, using the threat of physical force to intimidate a witness, in violation of 18 U.S.C. § 1512(a)(2)(A) & (B)(i), (b)(1).

With respect to Count one, the indictment stated:

> On or about April 3, 2004, in the District of Kansas, the defendant, Stephan T. Bishop, a [person convicted of various felonies punishable by terms of prison exceeding one year] . . . did unlawfully and knowingly possess in and affecting commerce and receive any ammunition and firearm which has been shipped or transported in interstate commerce, that is a Hi-Point 9 mm pistol, serial number P117787, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

Rec. vol. I, doc. 13, at 1. The indictment did not specifically mention the .38 caliber bullet.

3

During trial, the government introduced evidence to support a conviction under Count one. It introduced not only the Hi-Point 9 mm pistol, but also the .38 caliber bullet that police had found in Mr. Bishop's pocket at the time of his arrest. Mr. Bishop objected to the admission of the bullet, arguing that the language of the indictment limited the Count one charge to possession of the Hi-Point 9 mm pistol. The district court overruled the objection, and admitted the .38 caliber bullet into evidence. Mr. Bishop later objected to the jury instructions, which permitted the jury to find him guilty of Count one if it concluded that he had possessed either the pistol or the bullet. Rec. vol. I, doc. 49, at 15. The district court also overruled that objection.

During trial, Ms. Black testified against Mr. Bishop. At the end of the first day of trial, the government had finished its direct examination of Ms. Black, and Mr. Bishop's counsel had begun cross examination of her. That afternoon, while court was in recess for the day, Ms. Black provided the government with three additional emails, which she had not previously disclosed, that contained threats from Mr. Bishop.

The government did not immediately provide these emails to Mr. Bishop's attorney or to the court. Instead, during its redirect examination of Ms. Black on the second day of trial, the government simultaneously provided copies of the emails to the court and to Mr. Bishop's attorney, and attempted to admit them into evidence. Mr. Bishop objected to the admission of one of the three emails,

4

arguing that the government had violated Rule 16(c) of the Federal Rules of Criminal Procedure by delaying its disclosure. The district court overruled the objection, but granted a brief continuance at the conclusion of the government's redirect examination of Ms. Black so that Mr. Bishop's attorney could review the emails and prepare for his re-cross examination.

The jury convicted Mr. Bishop on all seven counts. The Pre-Sentence Report ("PSR") placed Mr. Bishop's base offense level for the Count one conviction at 20, because Mr. Bishop had previously been convicted of at least one felony that was classified as a crime of violence. Rec. vol. IV, at 10, ¶ 29 (Pre-Sentence Report, dated Mar. 10, 2005); *see* U.S.S.G. § 2K2.1(a)(4). For his conviction on Counts two through seven, the PSR recommended adding two offense levels for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, adjusting the total offense level to 22. *Id.* ¶ 33. With respect to Mr. Bishop's criminal history category, the PSR recommended that he receive three criminal history points because he had served a sentence of more than one year and one day for a prior conviction, *see* U.S.S.G. § 4A1.1(a), and an additional two points because he had committed the instant offenses less than two years after release from imprisonment on that prior conviction. With a total of five criminal history points, the PSR set Mr. Bishop's criminal history category at III. *See* Rec. vol. IV, at 13 ¶ 43. Given a criminal history category of III, and a total adjusted offense level of 22, the PSR determined that the range for imprisonment was 51 to

63 months.

Mr. Bishop objected to the additional two criminal history points that the PSR recommended because he committed the instant offense within two years of his release from prison. Mr. Bishop had been in prison since 1985, having been convicted of aggravated assault, aggravated burglary, aggravated kidnaping, and rape. In 2003, his rape conviction was reversed due to the discovery of exculpatory DNA, and he was released from prison. The Kansas Department of Corrections, through a pre-sentence investigator, informed the district court that Mr. Bishop would have been released in 1995 if he had not been convicted of the rape. Rec. vol. III, at 509-10.[1] Because Mr. Bishop should have been released in 1995, but for the rape conviction that was overturned, the district court sustained Mr. Bishop's objection and did not apply the extra two criminal history points that the PSR recommended.

The district court re-calculated his criminal history category as II. With the

---

[1] There is no indication that Mr. Bishop was improperly convicted of the very serious aggravated burglary, aggravated assault, and the aggravated kidnaping offenses arising out of the same incidents as the overturned rape conviction. The PSR describes the incident as follows: Mr. Bishop and two other people broke into a residence where a man and a woman were sleeping. The victims were tied up using duct tape, and the woman was raped. When Mr. Bishop and the two other people left, they took two children with them who were in the legal custody of the man living in the residence. The woman who was raped identified Mr. Bishop as her assailant, but DNA evidence later revealed that her identification was incorrect, suggesting that one of his companions was the rapist. Rec. vol. IV, at 11-12.

adjusted offense level remaining at 22 and a criminal history category of II, the Guidelines sentencing range was 46 to 57 months. Recognizing, however, that *United States v. Booker*, 542 U.S. 220 (2005) rendered the Sentencing Guidelines advisory and required that district courts impose reasonable sentences, the district court "determined that a reasonable sentence in this case is 78 months." Rec. vol. III, at 529.

Mr. Bishop timely filed notice of appeal. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm the district court's decisions and Mr. Bishop's sentence.

## II. DISCUSSION

Mr. Bishop presents three arguments on appeal: (1) that the admission of the bullet into evidence, and the jury instructions permitting conviction of Count one based on possession of the bullet, constructively amended the indictment, in violation of the Fifth and Sixth Amendments; (2) that the district court erred by admitting an additional email to Ms. Black because his counsel did not receive a copy of it until the day the government sought to admit it; and (3) that his 78-month sentence is unreasonable. We review each argument below.

A.    Constructive Amendment of the Indictment

Count one of the indictment charged Mr. Bishop with "unlawfully and knowingly possess[ing] in and affecting commerce and receiv[ing] any

7

ammunition and firearm which has been shipped or transported in interstate commerce, that is a Hi-Point 9 mm pistol, serial number P117787." Rec. vol. I, doc. 13, at 1. Mr. Bishop contends that the phrase "that is a Hi-Point 9 mm pistol, serial number P117787" limited the indictment, charging him *only* with violating §§ 922(g) and 924(a)(2) by possession of the particularly-described firearm. According to Mr. Bishop, the district court constructively amended the indictment against him by admitting the bullet into evidence and instructing the jury that he could be convicted of Count one for possession of only the bullet. We review *de novo* a district court's determination regarding whether its proceedings constructively amended an indictment. *United States v. Tieu*, 279 F.3d 917, 920 (10th Cir. 2002). However, we may review Mr. Bishop's constructive amendment claim for harmless error. *Id.* at 921.

The Constitution prohibits constructive amendment of an indictment. The prohibition is derived from the Fifth Amendment, which provides that "[n]o person shall be held to answer for . . . [an] infamous crime, unless on a presentment or indictment of a Grand Jury," U.S. CONST. amend. V, and from the Sixth Amendment, which guarantees that a defendant have notice of the charges against him, *Tieu*, 229 F.3d at 921. Constructive amendment occurs when proceedings in district court, such as the evidence admitted or the instructions provided to a jury, "broaden[] the basis for a defendant's conviction beyond acts charged in the indictment." *Id.* To violate the Fifth and Sixth amendments, the

8

proceedings "must modify an essential element of the defense or raise the possibility that the defendant was convicted of an offense other than that charged in the indictment." *Id.*

Mr. Bishop relies primarily on a case from the Seventh Circuit, *United States v. Leichtnam*, 948 F.2d 370 (7th Cir. 1991), to support his argument that the jury instructions and admission of the .38 caliber bullet into evidence constructively amended the indictment. In *Leichtnam*, the indictment charged that the defendant "did knowingly use and carry a firearm, to wit: a Mossberg rifle . . . ." *Id.* at 374. Yet, at trial, the government introduced two other guns, in addition to the Mossberg, into evidence, and the jury instructions stated that the jury need only find that the defendant had used and carried any one of the three firearms, not specifically the Mossberg. *Id.* at 374-75.

The Seventh Circuit held that the jury instructions, coupled with the admission of the additional guns into evidence, constructively amended the indictment, explaining that an indictment "may not be *broadened*, so as to present the trial jury with more or different offenses than the grand jury charged." *Id.* at 377. If an indictment charges particulars, the jury instructions and evidence introduced at trial must comport with those particulars. *See id.* at 380 ("the indictment specified a single, narrow basis for conviction"). The court provided an example that we also find illustrative: if an indictment charges a RICO violation because of an enterprise with a particularly-named family, the jury

9

cannot find the defendant guilty of enterprise with any group of people – the particular family itself "become[s] an essential element of the charge." *Id*. at 378 (citing *United States v. Weissman*, 899 F.2d 1111 (11th Cir. 1990)). Applying this principle to the Mossberg rifle issue, the court held that the indictment's identification of the firearm as a Mossberg rifle narrowed the indictment, making that Mossberg rifle an essential element of the indictment. Because the other two guns were admitted into evidence, and because the jury instructions permitted the jury to find the defendant guilty based on ownership either of the Mossberg *or* one of the two other guns, the indictment against the defendant was constructively amended. *Id*. at 379-81.

The court additionally commented:

> Obviously, the government could easily have drawn up [the defendant's] indictment to charge him simply with having used or carried "a firearm." But it did not do so, and the description it gave of the gun in the indictment, "to wit a Mossberg rifle Model 250CA with no serial number," was not merely surplusage. . . . By the way the government chose to frame [the defendant's] indictment, it made the Mossberg an essential part of the charge and limited the bases for possible conviction to the Mossberg.

*Id*. at 379. Thus, the constructive amendment arose because of the government's choice to word the indictment narrowly. *See id*. at 380 (reiterating that the AUSA could have "drafted a broader, less specific indictment").

Mr. Bishop's case is slightly different from *Leichtnam* because the indictment against him mirrored statutory language by referring to "*any*

10

*ammunition* and firearm which has been shipped or transported in interstate commerce," Rec. vol. I, doc. 13, at 1 (emphasis added), before listing the specific firearm, rather than simply "a firearm," as in *Leichnam*, 948 F.2d at 921. The government argues that the inclusion of the broad term "any ammunition" means that it could prove Mr. Bishop had violated §§ 922(g) and 924(a)(2) either by proving he possessed the Hi-Point pistol or proving he possessed any ammunition. We disagree.

Even though the indictment in question used the language "any ammunition and firearm which has been shipped or transported in interstate commerce," it explicitly modified that terminology with the phrase "that is, a Hi-Point 9mm pistol." As in *Leichtnam*, the government could have left the indictment language broad, but here choose to "limit[] the bases for possible conviction" to a specific firearm. 948 F.2d at 379. The indictment's use of the phrase "any ammunition and firearm which has been shipped or transported in interstate commerce" is merely a generic recitation of statutory language, rather than "a broader, less specific indictment," *id.* at 380, given that immediately following that phrase, the indictment states "that is, a Hi-Point 9mm pistol."[2]

_____

[2] Section 922(g) makes it unlawful for certain felons "to ship or transport in interstate . . . commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate . . . commerce." The indictment here uses all the relevant statutory terms: "Stephan T. Bishop . . . did unlawfully and knowingly possess in
(continued...)

11

Additionally, we do not believe that the phrase "that is, a Hi-Point 9mm pistol" refers only to the word "firearm." Instead, the phrase "Hi-point 9mm pistol" qualifies the entire phrase immediately preceding it, "any ammunition and firearm which has been shipped or transported in interstate commerce." The doctrine of the last antecedent, used by courts when interpreting statutes, informs our decision. "The doctrine of the last antecedent teaches that qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding and not to others more remote." *United States v. Hodge*, 321 F.3d 429, 436 (3d Cir. 2003). Here, the phrase "that is, a Hi-Point 9mm pistol" must qualify the entire phrase immediately preceding it, "any ammunition and firearm which has been shipped or transported in interstate commerce." We therefore hold that the admission of the .38 caliber bullet and the jury instructions constructively amended the indictment against Mr. Bishop.

The government urges that, even if the indictment was constructively amended, any error is harmless. It directs us to the verdict form, which required the jury to indicate (1) whether it unanimously agreed that Mr. Bishop was guilty of possessing the .38 caliber bullet, and (2) whether it unanimously agreed that Mr. Bishop was guilty of possessing the Hi-Point 9mm pistol. *See* Rec. vol. 1,

---

[2](...continued)
and affecting commerce and receive any ammunition and firearm which has been shipped or transported in interstate commerce . . . ." Rec. vol. I, doc. 13, at 1.

12

doc. 51, at 1. The jury found Mr. Bishop guilty of possessing *both* the Hi-Point 9mm pistol and the .38 caliber bullet. *Id.* Thus, even if the bullet had never been part of the evidence admitted at trial and the jury had never been instructed regarding the bullet, we can definitively conclude that the jury would have convicted Mr. Bishop on the same count merely due to his possession of the pistol.

Additionally, we note that Mr. Bishop's sentence was not enhanced in any way because the jury convicted him of possessing both the bullet and the firearm. Rec. vol. IV, at 10, ¶ 29 (citing U.S.S.G. § 2K2.1); *see Tieu*, 279 F.3d at 921 (explaining, where a defendant contended his indictment charged him only with possessing a firearm and not possessing ammunition, that even if the district court erred by submitting the issue of possession of ammunition to the jury, "the error was rendered harmless when the district court dismissed the ammunition charge [in post-trial proceedings]. The special verdict form required the jury to unanimously determine whether Defendant knowingly possessed a firearm and the jury returned a guilty verdict on this charge."). Thus, we conclude that the constructive amendment of the indictment constituted harmless error.

B.     Admission of Email Evidence

Mr. Bishop next presents two arguments that the court's admission of an email he wrote to Ms. Black requires that he be re-tried for Counts two through seven. First, he

argues that the government violated Rule 16 of the Federal Rules of Criminal Procedure by not promptly disclosing this evidence, and that because of this violation, the district court should not have admitted the email into evidence. Second, Mr. Bishop contends that the district court should have found that the government engaged in prosecutorial misconduct. We examine each alleged point of error in turn.

1.      Alleged Rule 16 Violation

To sanction a party for failing to comply with the requirements of Rule 16, a district court may "order that party to permit the discovery or inspection[,] . . . grant a continuance[,] prohibit that party from introducing the undisclosed evidence[,] or enter any other order that is just under the circumstances." FED. R. CRIM. P. 16(d)(2). We will not disturb a district court's decision to apply, or not to apply, a particular sanction absent an abuse of discretion. *United States v. Charley*, 189 F.3d 1251, 1261-62 (10th Cir. 1999).

Mr. Bishop contends that the government did not comply with Rule 16(c) of the Federal Rules of Criminal Procedure, which provides that "[a] party who discovers additional evidence or material before or during trial must promptly disclose its existence to the other party or the court if (1) the evidence or material is subject to discovery or inspection under this rule; and (2) the other party previously requested, or the court ordered, its production." FED. R. CRIM. P. 16(c).

Here, Ms. Black had testified on direct examination that Mr. Bishop sent her

emails that threatened to hurt her if she testified that the gun was his, and that tried to convince her to take the blame for the gun. During cross-examination on the same day as direct examination, Mr. Bishop's attorney asked questions about Ms. Black's relationship with Mr. Bishop to show that any threats contained in the emails were not linked to her potential testimony against Mr. Bishop, but rather were made in response to their recent break-up. Following this cross examination and after court had recessed for the day, Ms. Black provided the government with three additional, previously undisclosed emails to rebut Mr. Bishop's attorney's cross examination.

When Mr. Bishop's counsel continued his cross examination on the following day, the government had not yet provided him the additional emails. Rather, the government waited until its redirect examination, when it simultaneously sought to admit the emails and provided them to Mr. Bishop's counsel. Mr. Bishop objected to the admission of one of the emails at trial (after the other two emails had been admitted without objection), but the district court overruled this objection. Mr. Bishop then asked for a recess to review the emails prior to his re-cross examination, and the district court granted this request. Following the recess, Mr. Bishop's attorney indicated that he was ready to proceed with re-cross examination. He did not request additional time to review the new email evidence.

Although, as the district court implied, it may have been better practice for the government to provide the emails immediately when trial began on the second day, we

15

see no abuse of discretion in the district court's decision to grant a short continuance rather than exclude the email. Even assuming that the government's failure to disclose the email at the beginning of the second day of trial constituted a violation of Rule 16, "Rule 16(d)(2) of the Federal Rules of Criminal Procedures gives the district court broad discretion in imposing sanctions on a party who fails to comply with [the Rule]." *United States v. Wicker*, 848 F.2d 1059, 1060 (10th Cir. 1988). A court may grant a continuance, refuse to admit the non-compliant evidence, or "enter any other order that is just under the circumstances." FED. R. CRIM. P. 16(d)(2)(D). "Despite this broad grant of power, the district court's exercise of discretion should be guided by several factors; and if a sanction is imposed, it should be the least severe sanction that will accomplish prompt and full compliance with the court's discovery orders." *Wicker*, 848 F.2d at 1060 (internal quotation marks and alteration omitted). "It would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings." *Golyansky*, 291 F.3d 1245, 1249 (10th Cir. 2002).

Nothing in the record indicates that the continuance the district court granted Mr. Bishop was not sufficient to cure any prejudice that may have resulted from the government's failure to provide his counsel with the email as soon as trial resumed. Additionally, Mr. Bishop never argued before the district court or on appeal that the government acted in bad faith. Finally, Mr. Bishop's counsel made no indication at trial that the time allotted for continuance was insufficient for him to review the email with his

16

client and formulate a strategy for re-cross examination of Ms. Black. We therefore hold that the district court did not abuse its discretion by declining to exclude the email in question and, instead, providing time for Mr. Bishop's counsel to review the new evidence and incorporate it into his re-cross examination.

2.     Alleged Prosecutorial Misconduct

We also review a district court's denial of a motion for a new trial due to prosecutorial misconduct only for an abuse of discretion. "We engage in a two-step process in reviewing claims of prosecutorial misconduct. First, we determine if the conduct was improper. Second, we determine if any improper conduct warrants reversal." *United States v. Gordon*, 173 F.3d 761, 769 (10th Cir. 1999). In the second step, "we consider the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case as a whole." *Id.* (internal quotation marks omitted).

Mr. Bishop essentially argues that the government's failure to produce the emails as soon as trial resumed constituted prosecutorial misconduct and that the incriminating nature of the email evidence requires us to grant a new trial. We do not agree. First, assuming without deciding that the government should not have delayed in producing the emails, we do not believe any misconduct that occurred was egregious or extensive, or played a significant role in the case. The district court found that "[w]hile the government did not disclose the new emails to the defendant before the beginning of the second day of trial, the emails were produced to defendant approximately twenty minutes

17

into the proceedings." Rec. vol. I, doc. 62, at 10 (Dist. Ct. Order, dated Apr. 4, 2005).

Additionally, Mr. Bishop does not assert that the curative measure taken by the district court – the recess granted to enable Mr. Bishop's trial counsel to review the emails and prepare his re-cross examination – was insufficient to cure any prejudice resulting from the alleged misconduct. Finally, we reiterate that Mr. Bishop's trial counsel did not request extra time to review the emails, nor does he assert on appeal that the district court did not provide him with sufficient time in recess to review the new evidence. We therefore hold that any alleged misconduct does not warrant a new trial.

## C.      Reasonableness of Sentence

Mr. Bishop's final argument is that his 78-month sentence is unreasonable because it is "some 20 months longer than the maximum guideline sentence." Aplt's Br. at 11. He also contends that the district court impermissibly considered the set-aside rape conviction when sentencing him, even though DNA evidence proved that Mr. Bishop did not commit the rape. He requests that we remand his case for re-sentencing before a different judge.

We review a district court's post-*Booker* sentencing decision for reasonableness, using the factors enumerated in 18 U.S.C. § 3553(a) as our guide. *United States v. Booker*, 543 U.S. 220, 261-262 (2005). Our circuit has established a two-step process for determining whether a sentence is reasonable. First, we determine whether the district court properly calculated the sentence under the Guidelines. *United States v. Chavez-*

*Diaz*, 444 F.3d 1223, 1229 (10th Cir. 2006). Second, if we conclude that the district court has properly calculated the Guidelines' range, we then review the sentence for reasonableness. *Id.*

Here, Mr. Bishop does not challenge the district court's calculation of the sentencing range under the Guidelines. Rather, he challenges the court's decision to sentence him to 78 months' imprisonment, when the sentencing range recommended by the Guidelines was 46 to 57 months. We recently considered whether "a sentence that is extremely light when compared to the applicable advisory guidelines range was reasonable." *United States v. Cage*, 451 F.3d 585, 590 (10th Cir. 2006). This case presents the other side of that same coin: whether a sentence that is higher than the maximum Guidelines' range is reasonable.

In *Cage*, we held that the district court's sentence of six days was unreasonable when the Guidelines recommended a sentence of at least 46 months. We held that such "an extraordinary departure must be supported by extraordinary circumstances," *id.* at 594 (alteration and internal quotation marks omitted), and required that "an extreme divergence . . . should be considered reasonable only under dramatic facts," *id.* The district court had provided many reasons under § 3553(a) for imposing a six-day sentence, including especially the defendant's familial situation and her status as a single mother whose child has medical problems. We reasoned that an extreme variance must be justified by § 3553 factors that are particular and individualized, not those that may be

common to many defendants. We explained that although "[w]e are not insensitive to the problems of incarcerating a single mother . . . [h]er situation is, unfortunately, not very uncommon." *Id.* at 596. "Although these facts may justify some discrepancy from the advisory guidelines range, they simply are not dramatic enough to warrant such an extreme downward variance." *Id.*; *see also United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) ("[O]n appellate review, we will view as inherently suspect a non-Guidelines sentence that rests primarily upon factors that are not unique or personal to a particular defendant, but instead, reflects attributes common to all defendants.").

Our decision in *Cage* also outlined our responsibilities on appellate review of a sentence that varies from the advisory Guidelines range. We had previously explained that the concept of reasonableness "necessarily encompasses . . . the *method* by which the sentence was calculated." *United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006). In *Cage*, we elaborated, stating that "[r]easonableness has both procedural and substantive components." 451 F.3d at 591. "[W]e reject[ed] the concept that we, as judges, should determine 'reasonableness' under § 3553(a) without reference to the fact that the Guidelines represent a critical advisory aspect of the § 3553(a) factors." *Id.* at 594. Thus, where a sentence that varies from the Guidelines has no connection to the guideposts created by the Sentencing Commission (such as criminal history points, offense characteristics, offense levels, etc.), we look to whether the district court employed another reasonable methodology in calculating the sentence. On the other

20

hand, if a sentence that varies from the advisory Guidelines range is nevertheless tethered to the Guidelines themselves, we will likely consider this a reasonable methodology.

Additionally in *Cage*, we explained that the extremity of the variance between the actual sentence imposed and the applicable Guidelines range should determine the amount of scrutiny we give to the district court's substantive sentence. In considering the "discrepancy between the advisory guidelines range and the actual sentence," the "comparative difference" should guide our review. *Id.* If the difference between the advisory guidelines range and the actual sentence is not extreme, "but still outside the guidelines range, the district court's decision would not have been presumptively reasonable but an appropriate justification would suffice for this court to determine that it is reasonable." *Id.* "How compelling that justification must be is proportional to the extent of the difference between the advisory range and the sentence imposed." *United States v. Johnson*, 427 F.3d 423, 426-27 (7th Cir. 2005); *see also United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006) ("[W]hen the variance is a substantial one, . . . we must more carefully scrutinize the reasoning offered by the district court in support of the sentence."), *cert. denied*, 126 S.Ct. 2054 (2006); *accord United States v. Smith*, 445 F.3d 1, 4 (1st Cir. 2006); *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006); *United States v. McMannus*, 436 F.3d 871, 874 (8th Cir. 2006); *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005); *but cf. Rattoballi*, 452 F.3d at 134 ("[W]e have yet to

21

adopt this standard as a rule in [the Second] circuit, and [we] do not do so here . . . .").

The comparative difference between Mr. Bishop's sentence of 78 months and the advisory range maximum of 57 months is a 37% increase. This is a significant increase that requires sufficient explanation and justification. Because the district court carefully examined Mr. Bishop's individualized circumstances using the § 3553 factors, and increased the sentence by linking the variance to the Guidelines themselves, we hold that Mr. Bishop's 78-month sentence was reasonable.

At the sentencing hearing, the district court explained its rationale behind the sentence it imposed by reference to the sentencing factors set forth in § 3553(a). Noting that a sentence should take into account "the nature and circumstances of the offense," and "reflect the seriousness of the offense, . . . promote respect for the law, and . . . provide just punishment for the offense," *see* 18 U.S.C. § 3553(a)(1), (2)(A); Rec. vol. III, at 533, the court stated that it thought the total offense level of 22 did not adequately meet the goals of the Guidelines. It provided two distinct reasons for this, both connected to the fact that Mr. Bishop received only a two-level increase from his base offense level for obstruction of justice related to his convictions on Counts two through six.

First, Mr. Bishop received the same two-offense-level increase for convictions related to six counts of witness intimidation as he would have if he had only been convicted of one count. "[H]e would have gotten those same two levels had there been just one even half-hearted attempt . . . to try to get Emily Black not to testify . . . . Yet

here what we saw was six counts that escalated in not only their rhetoric but in their threats of violence . . . ."  Rec. vol. III, at 534.

Second, the two-level increase did not reflect Mr. Bishop's obstruction of justice with respect to his untruthful testimony.  The district court explicitly found that Mr. Bishop "knowingly and willfully lied to the jury and to the court about the circumstances surrounding [his possession of] the gun," *id.* at 535, and that Mr. Bishop should be held culpable for this conduct.  Mr. Bishop does not challenge this finding on appeal.  *See United States v. Gillespie*, 452 F.3d 1183, 1190 n.2 (10th Cir. 2006) (explaining that, even though an obstruction of justice enhancement was not considered by the jury and proven beyond a reasonable doubt, where the defendant "was sentenced after *Booker* and the District Court treated the Guidelines as advisory . . . there is no Sixth Amendment violation").

The district court also closely considered "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and the need "to afford adequate deterrence to criminal conduct [and] to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(B)&(C).  The district court was troubled by the indications that Mr. Bishop had engaged in other low-level criminal conduct since his release from prison in 2003, which led it to find that probation and leniency had little deterrent effect on Mr. Bishop.  Rec. vol. III, at 538-39 ("his multiple parole violations, when the authorities had the opportunity to give him punishment for failing to abide by the rules of society and he saw that the authorities were willing to do that, that didn't deter him from here committing the

23

offenses [for which he was convicted]").

Additionally, although the district court had sustained Mr. Bishop's objection to the PSR's calculation of his criminal history points due to the discovery of exculpatory DNA evidence on the rape conviction, it indicated that the Guidelines gave Mr. Bishop "a windfall for the decision not to go back and reprosecute [him for his role in the rape] . . . ; it's a windfall from the standpoint of looking at his criminal history calculation." *Id.* at 540. Mr. Bishop contends that the district court impermissibly considered a criminal conviction that had been set aside due to factual innocence, and that he should be re-sentenced before a different judge due solely to this error.

We agree that the district court impliedly expressed a view that Mr. Bishop, although not the perpetrator of the rape, was somehow criminally culpable for it due to the "windfall" he received for the rape not counting towards his criminal history points. The only support for this assumption we can glean from the record is that, during the sentencing hearing, the government represented that Kansas prosecutors "could have gone back to trial" and that Mr. Bishop "could have still been convicted under an aider and abettor theory." *Id.* at 507. Although the record is inadequate for us to conclude that the subsequent re-prosecution would have been effective, when the district court's remarks about Mr. Bishop's criminal history are taken in totality, we believe that the court was emphasizing the overall seriousness of the crimes that were committed. The district court expressed additional, valid concerns about the Guidelines understating Mr. Bishop's criminal history with respect to the seriousness of his convictions for the

24

aggravated kidnaping and burglary charges. *Id.* at 540 ("the circumstances surrounding that event were something that actually are not . . . reflected by the . . . convictions which remain"). Therefore, we do not believe that the district court's single reference to the rape conviction renders Mr. Bishop's sentence unreasonable.

Having enumerated its detailed and particularized reasons under § 3553(a) for deciding to impose a sentence that exceeded the applicable Guidelines' range, the district court then turned to the Guidelines themselves to advise it on how to calculate an appropriate sentence. "An Offense Level 24 and criminal history category of three gave an upward – a range of 63 to 78 [months]. So too did a total offense level of 25 and a criminal history category of two. I felt that . . . this gave the court some real guidance about where a reasonable sentence should fall." *Id.* at 541.

The district court's approach to fashioning an appropriate sentence was reasoned, and the ultimate sentence was reasonable. In the facts of this case, the Guidelines do tend to under-represent Mr. Bishop's criminal conduct, because as the district court noted, he would have received the same additional offense levels added to the base offense level even if he had been convicted of only one count of witness intimidation. Additionally, the prior felony convictions were for particularly heinous crimes, one of which carried a life sentence. *Cf. United States v. Kendall*, 446 F.3d 782, (8th Cir. 2006) (holding that the defendant's criminal history was not "the type of extraordinary record to justify an extraordinary variance" where the defendant had been convicted only of one second-degree burglary offense, four motor-vehicle offenses, and misdemeanor possession of a

25

controlled substance).  Finally, we note that the district court did not abandon the tools provided by the advisory Guidelines.  It carefully considered how the Guidelines would advise sentencing Mr. Bishop if additional offense levels were added.  Circumstances such as those Mr. Bishop's case presented justify an upward variance, and the district court's methodology and basis for imposing a sentence above the Guidelines range were sound.  The district court did not "effectively ignore[] the advice of the Guidelines," *Cage*, 451 F.3d at 594, nor did it "import [its] own philosophy of sentencing . . . ." *Dean*, 414 F.3d at 729.  Rather, the court used the advisory Guidelines as a tool for fashioning a reasonable sentence.

## III.  CONCLUSION

Because we hold that (1) the constructive amendment of the indictment was harmless error, (2) that the district court was within its discretion to admit the email evidence, and (3) that Mr. Bishop's sentence was reasonable, we AFFIRM Mr. Bishop's convictions and sentence.