FILED
United States Court of Appeals
Tenth Circuit

December 7, 2007

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SHAUNA L. MUMMA,

Defendant-Appellant.

No. 06-3163

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D. Ct. No. 05-CR-10055-02-MLB)

---

Howard A. Pincus, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender for the Districts of Colorado and Wyoming, Denver, Colorado, appearing for Appellant.

Brent I. Anderson, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), Office of the United States Attorney for the District of Kansas, Wichita, Kansas, appearing for Appellee.

---

Before **TACHA**, Chief Circuit Judge, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

Defendant-Appellant Shauna L. Mumma appeals the substantive reasonableness of her 48-month sentence, which is 300% and 36 months higher than the top of the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

During the fall of 2002, Ms. Mumma and her husband Douglas Mumma applied for and received a line of credit at Bank of the Prairie in Olathe, Kansas. In support of that application, Ms. Mumma provided the bank with two signed documents that gave a false social security number. The following year, the Mummas filed for bankruptcy. In the bankruptcy petition, which Ms. Mumma signed, Ms. Mumma falsely represented that she did not have any bank accounts by failing to disclose the existence of the Bank of the Prairie account.

In April 2005, a federal grand jury returned a three-count indictment based on the false statements in her Bank of the Prairie loan application and in her bankruptcy petition. She was arrested that month and released on bond. In September, Ms. Mumma waived prosecution by indictment and was charged by information with one count of making a false statement to a financial institution in violation of 18 U.S.C. § 1014 and one count of bankruptcy fraud for failing to disclose all bank accounts in violation of 18 U.S.C. § 152(3). She subsequently pleaded guilty to both counts. Mr. Mumma, who is not a party to this appeal, was

-2-

also charged with and pleaded guilty to bankruptcy fraud of the same type as his wife.

A presentence report ("PSR") was prepared. The PSR reported that Ms. Mumma had several prior arrests and convictions for financial crimes. Specifically, in the eleven years prior to the charges in the instant case, Ms. Mumma had five prior convictions for passing worthless checks (one conviction encompassed three separate counts), three prior arrests for passing worthless checks that were never prosecuted, a conviction for impairing a security interest by selling a car without the consent of the secured party, and a two-count conviction for forgery. Based on her criminal history, Ms. Mumma was placed in criminal history category III. With a total offense level of eight, *see* U.S.S.G. §§ 2B1.1(a)(1), 2B1.1(b)(8)(B), 3E1.1(a), the advisory Guidelines range was 6-12 months' imprisonment.[1]

On January 25, 2006, the day before Ms. Mumma was scheduled to be sentenced, the District Court received an e-mail from a United States Probation Officer in Florida suggesting that the Mummas had defrauded Florida residents Linzel and Chelsea Carty from May to December 2005 while the Mummas were out on bond in this case. The District Court gave the e-mail to counsel, continued

---

[1]The PSR erroneously reported Ms. Mumma's total offense level as 7 rather than 8. Based on the PSR, the District Court apparently made an error in Ms. Mumma's favor and arrived at a Guidelines range of 4-10 months. The parties agree that the correct range is 6-12 months, and Ms. Mumma does not argue that the court's procedural error affected the sentence she ultimately received.

the hearing to permit them to investigate the matter, and instructed counsel that it would hear evidence and arguments regarding the matter at the rescheduled sentencing hearing. The court indicated that the ultimate sentence would depend on whether the allegations could be proved. If they were, it would consider a sentence above the Guidelines range. Otherwise, it would follow the Guidelines and impose a within-Guidelines sentence.

At the sentencing hearing, the court heard testimony from FBI Special Agent Randal Wolverton, who had been assigned by the Government to investigate the relationship between the Mummas and the Cartys. Agent Wolverton testified, based on a discussion with Ms. Carty, an affidavit from Ms. Carty, and copies of the Cartys' bank statements, that between May and December 2005 the Mummas obtained approximately $12,175 from the Cartys and did not repay them.

According to Agent Wolverton,[2] the two couples struck up a friendship in May 2005—the month after the Mummas were arrested and released on bond for the charges that underlie this appeal—when the Mummas moved into a house across the street from the Cartys. On May 27, Mr. Mumma came to the Cartys' house and explained that he and his wife had moved from Kansas to Florida. He

---

[2]The court found Agent Wolverton "completely credible" and considered both his in-court testimony and his FBI report of the interview with Ms. Carty in reaching its sentencing decision. The factual account set forth above is based on Agent Wolverton's testimony and FBI report.

went on to say that they had purchased the house across the street from the Cartys and were having financial problems related to the purchase. Specifically, Mr. Mumma told the Cartys that he had a business in Kansas, and he had written a check from the business to another company in exchange for a certified check to present at closing on the house. According to Mr. Mumma, the business check bounced because his former business partner had emptied the account, so the Mummas needed $7799 to pay for the bad check. Mr. Mumma told the Cartys that he would be arrested if he did not get the money. He also assured the Cartys that he could repay them because he expected to receive a commission check of $30,000 within the month. Mr. Carty and his wife felt the Mummas had fallen on hard times, so on May 31, Mr. Mumma and Ms. Carty went to the Cartys' credit union, and Ms. Carty gave Mr. Mumma a certified check in the amount of $7799 payable to Amscot. The Cartys later learned that the Mummas were actually only renting the house.

Shortly after the $7799 loan, Ms. Mumma told Ms. Carty she was going to be arrested because she had written bad checks. She needed $3,536.85 plus a $40 returned-check fee to cover a bounced check she had written in order to register a vehicle in Florida. Consistent with Mr. Mumma's story, Ms. Mumma said that the check had bounced because Mr. Mumma's former business partner had wiped out the checking account. Ms. Carty gave Ms. Mumma a certified check to cover the bounced check and fee.

Ms. Carty also established a sub-account for the Mummas at the Cartys' credit union after she learned that the Mummas could not obtain a bank account and needed to be able to deposit checks they received from a handyman business Mr. Mumma had recently started. On July 27, 2005, Ms. Mumma transferred $4000 from the Cartys' account to the sub-account without the Cartys' permission. Ms. Carty was able to reverse $3500 of this transfer, but $500 had already been spent. The Mummas then proceeded to overdraw the sub-account. Ms. Mumma deposited a $1000 check into the sub-account to cover the overdraft, but the check was worthless as it was written on an account the Mummas had closed. The Mummas moved away shortly thereafter.

After Agent Wolverton testified, Ms. Mumma was given the opportunity to testify about the Cartys but declined to do so.[3] The District Court then asked counsel to address the central issue presented at the hearing: the extent, if any, to which the court should consider the so-called "Carty conduct." Indeed, the court made clear that it was troubled by Agent Wolverton's testimony that Ms. Mumma had engaged in additional fraudulent acts "while [she] was on bond having promised this Court that she would not commit any other crimes," and that such conduct spoke directly to her character. *See* 18 U.S.C. § 3553(a)(1) (requiring sentencing courts to consider the nature of the offense and characteristics of the offender). For his part, counsel for Ms. Mumma contended that the evidence at

---

[3]Mr. Mumma also declined to testify about the matter.

the hearing was not reliable, that the alleged conduct did not constitute relevant conduct under U.S.S.G. § 1B1.3, and that a within-Guidelines sentence was appropriate.

On March 31, 2006, the court issued a sentencing memorandum and order. The court noted that conduct that could not be considered relevant conduct under U.S.S.G. § 1B1.3 could nonetheless be considered under 18 U.S.C. § 3553(a). Turning to that statute, the court set forth several factors it considered relevant to sentencing. Those factors included the seriousness of the offenses (bankruptcy fraud and making a false statement to a financial institution), *see* § 3553(a)(2)(A), and the need for the sentence to deter future criminal conduct and protect the public given Ms. Mumma's long history of financial crimes, *see* § 3553(a)(2)(B), (C). In addition, the court noted that Ms. Mumma's conduct raised an inference that she may have committed undetected bankruptcy fraud in the past, and it found that Ms. Mumma was not remorseful. The court also emphasized that Ms. Mumma engaged in fraudulent activities while simultaneously receiving the benefit of being released on bond in this case. The court summarized:

> Given the unchallenged information before the court, there is no doubt that [Ms. Mumma was] involved in fraudulent activities while, at the same time, [was] receiving the benefit of not being detained in connection with this case. Had [she] been detained, the problems suffered by the Cartys would not have happened. This, along with the other factors just mentioned, further justifies a sentence in excess of that called for by the advisory guidelines.

The court then rejected the suggestion that Ms. Mumma should serve

-7-

anything other than "substantial" time in prison and sentenced her to 48 months' imprisonment, which is 36 months higher than the top of the Guidelines range.

## II. DISCUSSION

We review a district court's sentencing determination for abuse of discretion, asking whether the sentence is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a). *United States v. Garcia-Lara*, 499 F.3d 1133, 1135 (10th Cir. 2007). A sentence within the properly calculated Guidelines range is presumptively reasonable on appeal. *Id.* at 1136. When, as is the case here, the district court varies from the Guidelines, the sentence is reasonable so long as the extent of the variance is commensurate with the facts of the particular case. *Id.* at 1138. Specifically, under our current framework, an "extreme" variance is reasonable if it is supported by "dramatic facts." *Id.* "A 'substantial' variance requires 'compelling reasons, though they need not be as dramatic as the reasons supporting an extreme divergence.'" *Id.* (quoting *United States v. Hildreth*, 485 F.3d 1120, 1128 (10th Cir. 2007)). A "significant" variance requires "only 'sufficient explanation and justification.'" *Id.* (quoting *United States v. Bishop*, 469 F.3d 896, 908 (10th Cir. 2006)).

When determining whether a variance is extreme, substantial, or significant, "we look to the difference between the advisory Guidelines range and the sentence imposed in terms of both percentage and absolute number of months." *Id.*; *see also United States v. Mateo*, 471 F.3d 1162, 1170 (10th Cir.

2006) (471% and 99-month variance is extreme); *United States v. Cage*, 451 F.3d 585, 594 (10th Cir. 2006) (99.96% and 45.8-month variance is extreme); *United States v. Valtierra-Rojas*, 468 F.3d 1235, 1240 (10th Cir. 2006) (122% and 33-month variance is substantial); *Bishop*, 469 F.3d 896, 908 (10th Cir. 2006) (37% and 21-month variance is significant).

In this case, Ms. Mumma's 48-month sentence is 300% and 36 months higher than the top of the advisory Guidelines range of 6-12 months. Although the percentage of the variance is certainly extreme under our precedent, in terms of actual length, the variance is not as pronounced—a situation that will often result when the advisory Guidelines range is relatively short. We need not decide whether the variance is extreme or simply substantial, however, because even under the higher scrutiny we apply to extreme variances, we determine the sentence is reasonable. *See Garcia-Lara*, 499 F.3d at 1139 (taking the same approach).

As noted above, the District Court supported Ms. Mumma's sentence in part by reasoning that bankruptcy fraud and making a false statement to a financial institution are serious crimes. *See* 18 U.S.C. § 3553(a)(1), (2)(A). The District Court, however, did not identify anything about the offense conduct *in this particular case* that made it stand out from such offense conduct generally. Put another way, the seriousness of bankruptcy fraud and making a false statement to a financial institution in general are already accounted for by the

Guidelines. To support a variance based on the seriousness of the offenses in this case, the District Court should have identified something about Ms. Mumma's conduct in committing these crimes that reflected a difference from such conduct in general. *See Mateo*, 471 F.3d at 1169 (explaining that the reasonableness of a non-Guidelines sentence "is determined by considering whether the particular characteristics of the defendant the court relied upon in fashioning the sentence are commonplace—and therefore presumably are already part of the Guidelines calculation—or are sufficiently uncommon to justify a divergence from the presumptively reasonable Guidelines sentence."). Thus, the seriousness of these crimes cannot be used to justify a variance.

The District Court also reasoned that Ms. Mumma's extensive history of committing financial crimes demonstrated "that she has learned nothing from her repeated contact with the judicial system, which enhances the need to fashion a sentence in this case which emphasizes deterrence and protection of the public." *See* 18 U.S.C. § 3553(a)(2)(B), (C) (requiring court to consider the need for the sentence to deter criminal conduct and protect the public). It also emphasized that Ms. Mumma defrauded the Cartys while out on bond in this case, which further justified a sentence higher than the one set by the Guidelines. *See id.*; *see also* § 3553(a)(2)(A) (requiring court to consider the need for the sentence "to promote respect for the law"). On appeal, Ms. Mumma concedes that these facts justify an upward variance, but argues that they are not dramatic and therefore do

not support the extent of the variance in this case.[4]

To demonstrate that the extent of the variance is unreasonable, Ms. Mumma asks us to compare her 48-month sentence with hypothetical sentences calculated under the Guidelines—for example, a sentence calculated as an upward departure (from the advisory Guidelines range) under U.S.S.G. § 4A1.3(a). She argues that the shorter hypothetical sentences render her longer sentence unreasonable by comparison. But this argument is without merit because, as we have previously explained, a *range* of reasonable sentences may exist in any given case. *See Garcia-Lara*, 499 F.3d at 1136. The reasonableness of one sentence does not, therefore, necessarily render a different sentence unreasonable by comparison. *See Rita*, 127 S. Ct. at 2467 (noting that appellate presumption of reasonableness for Guidelines sentences does not mean appellate courts may apply a presumption of unreasonableness to non-Guidelines sentences). A sentencing court may, of course, look to the Guidelines for guidance in determining the length of a non-Guidelines sentence. *See Mateo*, 471 F.3d at 1170 (holding that the district court

---

[4]We note that a district court may consider uncharged conduct in fashioning a sentence so long as the district court's finding is supported by a preponderance of the evidence. *See United States v. Magallanez*, 408 F.3d 672, 683–85 (10th Cir. 2005). A district court cannot, however, "essentially abandon[] consideration of the advisory guidelines range and substitute[] a calculation based explicitly on unrelated conduct with which [the defendant has] not been charged or convicted." *United States v. Allen*, 488 F.3d 1244, 1259 (10th Cir. 2007). In *Allen*, the district court recharacterized the offense, sentencing a defendant convicted of drug possession as though he had been convicted of a completely different offense. This is clearly not the case here, and Ms. Mumma does not argue to the contrary.

"did not err by looking to the armed career criminal portion of the Guidelines" in determining the length of the sentence). Moreover, in reviewing a sentencing decision, we may find a court's reference to or use of the Guidelines relevant in determining whether a particular variance is reasonable. *See, e.g.*, *Bishop*, 469 F.3d at 908 (holding that variance was reasonable because the court considered the facts of the case in light of the § 3553(a) factors and "link[ed] the variance to the Guidelines themselves"). But we will not conclude that a district court abused its discretion simply because it did *not* link the length of the variance to the Guidelines in some form. Rather, the relevant inquiry on appeal is whether the extent of the variance is justified by the facts of the case in light of the § 3553(a) factors.

In the present case, we conclude that the facts justify the extent of the District Court's variance. To begin, in the eleven years prior to the charges in the instant case, Ms. Mumma had five prior convictions for passing worthless checks (one conviction encompassed three separate counts), three prior arrests for passing worthless checks that were never prosecuted, a conviction for impairing a security interest by selling a car without the consent of the secured party, and a two-count conviction for forgery. Her criminal history is comprised almost entirely of crimes of fraud and deceit—crimes similar to those that she committed in this case and similar to the fraud she engaged in while out on bond in this case. It was clear to the District Court, as it is to us, that Ms. Mumma is a habitual

-12-

prevaricator who has not been deterred by her run-ins with state and municipal law or by her appearance in federal court in this case. Indeed, Ms. Mumma's behavior while out on bond highlights her disregard for both the law and the District Court in this case. Given her criminal history and post-offense conduct, we cannot say that a 48-month sentence is unreasonable. The District Court acted within its discretion in fashioning Ms. Mumma's sentence.[5]

### III.  CONCLUSION

The facts of this case are dramatic and therefore support Ms. Mumma's 48-month sentence. Accordingly, we AFFIRM her sentence.

---

[5]Ms. Mumma also contends that the District Court erroneously found that she had committed bankruptcy fraud in the past. We need not address that argument because Ms. Mumma's sentence is reasonable even without such a finding.

06-3163, *United States v. Mumma*
**MURPHY**, Circuit Judge, concurs in the result.