**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 14, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee/
Cross - Appellant,

v.

SCOTT D. HILDRETH,

Defendant - Appellant/
Cross - Appellee.

Nos. 06-3070, 06-3112

---

**APPEALS FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D. Ct. No. 05-CR-10016-WEB)**

---

Submitted on the briefs[*]:

Scott D. Hildreth filed a brief pro se.

D. Lee McMaster, Wichita, Kansas, for the Defendant-Appellant/Cross-Appellee.

Eric F. Melgren, United States Attorney, and Brent I. Anderson, Assistant United States Attorney, Office of the United States Attorney for the District of Kansas, Wichita, Kansas, for the Plaintiff-Appellee/Cross-Appellant.

---

[*]After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Before **TACHA**, Chief Circuit Judge, **BALDOCK**, and **LUCERO**, Circuit Judges.

**TACHA**, Chief Circuit Judge.

Defendant-Appellant Scott D. Hildreth was charged with two counts of knowingly possessing a machinegun in violation of 18 U.S.C. § 922(o). The jury returned a verdict of guilty on Count One and not guilty on Count Two. After calculating an advisory Guidelines range of 27 to 33 months' imprisonment, the court imposed a sentence of three years' probation. On appeal, Mr. Hildreth challenges his conviction, and the Government challenges the sentence imposed as unreasonable. We take jurisdiction under 28 U.S.C. § 1291, affirm Mr. Hildreth's conviction, vacate his sentence, and remand for resentencing.

## I. BACKGROUND

In July 2004, Mr. Hildreth ran an advertisement in the local newspaper offering to buy and sell guns. The following September, an undercover officer named Dee Stahl contacted Mr. Hildreth. She claimed to be recently widowed and asked whether he would be interested in purchasing her late husband's gun collection. Mr. Hildreth expressed interest and met with Officer Stahl at an undercover government residence on September 30, 2004, to inspect the guns. At the meeting, Officer Stahl presented Mr. Hildreth with a box containing ten guns and explained that she wanted to sell the entire collection in one transaction. Mr. Hildreth inspected each of the weapons and identified one of them as an

illegal machinegun.[1]  He warned Officer Stahl that she could be arrested, fined, and jailed

for owning the machinegun.  Officer Stahl explained that she could not immediately

finalize any deal because she needed to drive to Kansas City in order to give her brother-

in-law an opportunity to inspect and buy the guns.  Mr. Hildreth commented that Officer

Stahl might consider calling her brother-in-law rather than driving back to Kansas City

with the guns in order to avoid the risk of being caught with a machinegun.  Ultimately,

Mr. Hildreth offered to purchase all the guns, including the weapon he identified as an

illegal machinegun, for $3,150 in cash.  Unbeknownst to Mr. Hildreth, this entire meeting

was videotaped.  A few days later, on October 5, Mr. Hildreth met Officer Stahl at the

same residence and gave her the $3,150 in cash in exchange for the guns.  He was

arrested soon after he left the house with the guns.

   The jury convicted Mr. Hildreth of knowingly possessing the Polish AKM and

acquitted him of the second count involving the M10.  After the jury returned its verdict,

Mr. Hildreth moved the District Court for judgment of acquittal, arguing that the evidence

at trial established his defense of entrapment as a matter of law.  The District Court

denied the motion, finding that a rational jury could conclude that Mr. Hildreth was not

entrapped based on the evidence.  The court subsequently imposed a sentence of three

---

[1]The collection offered by Officer Stahl contained two firearms that the
Government alleged to be machineguns.  Count One of the superceding indictment
charged Mr. Hildreth with possession of a Polish AKM machinegun, and Count Two
charged him with possession of an RPB Industries, M10 .45 caliber machinegun.  As
noted above, the jury found Mr. Hildreth guilty on Count One and not guilty on Count
Two.

years' probation. Mr. Hildreth appeals the District Court's denial of his motion for judgment of acquittal, and the Government cross-appeals the court's decision to sentence Mr. Hildreth to three years' probation.

In addition, Mr. Hildreth seeks leave to file a supplemental opening brief, arguing that a previous order of this Court, dated November 20, 2006, granted him leave to do so. The facts related to this request are as follows. In August 2006, Mr. Hildreth submitted a motion seeking leave to file a supplemental *pro se* brief, which this Court received, but did not file, on August 3, 2006. The Government opposed the motion. On September 19, 2006, the Court received another supplemental brief from Mr. Hildreth entitled "Defendant's Pro Se Response to Government's Cross-Appeal." We struck this *pro se* brief because, at that time, Mr. Hildreth was represented by counsel. The following November, before filing a response and reply brief in this case, Mr. Hildreth's attorney sought leave to withdraw as counsel. In our November 20 order, we granted the attorney's motion to withdraw and then directed that Mr. Hildreth's brief entitled "Defendant's Pro Se Response to Government's Cross-Appeal" be shown as filed as of September 19, 2006. We did so because the order removed Mr. Hildreth's counsel, and he was therefore no longer represented by counsel for purposes of his response and reply brief. We noted that "[t]his directive effectively grants" Mr. Hildreth's August 2006 motion for leave to file a supplemental *pro se* brief. In addition, at the end of the order, we clearly stated that we would proceed on the following briefs: "the opening 'Brief of the Appellant' filed July 25, 2006 [by Mr. Hildreth's attorney]; the 'Brief of

Appellee/Cross-Appellant' filed by the United States on August 18, 2006; the 'Defendant's Pro Se Response to Government's Cross-Appeal' which we are now permitting to be filed as the response and reply of the appellant; and any final reply of the United States."

After we issued our order in November, Mr. Hildreth filed both a Motion to Clarify Court Order Dated November 20, 2006, and a Motion to Include Appellant's *Pro Se* Brief, asking that we strike the opening brief filed by his attorney and replace it with the supplemental brief he submitted in August. We now grant his request to clarify the November order, but deny his request to file the supplemental brief he submitted in August. Mr. Hildreth argues that, because our November order "effectively" granted his August motion to file a supplemental brief, we must file and consider the first supplemental brief he submitted (at the time of his motion). But as explained above, our November order only directed that his *second* supplemental brief be filed because he was no longer represented by counsel for purposes of the response and reply brief. That is, the order "effectively" granted his motion to file a supplemental brief only to the extent he was not represented by counsel. When Mr. Hildreth submitted his first supplemental brief, he was represented by counsel, who had already filed an opening brief. Because he was represented by counsel for purposes of his opening brief, we did not grant him leave to file a supplemental *opening* brief in our November order, and we decline to do so now. *See United States v. Pearl*, 324 F.3d 1210, 1216 (10th Cir. 2003) (denying motion to file supplemental *pro se* brief because the defendant was represented by counsel); *United*

- 5 -

*States v. McDermott*, 64 F.3d 1448, 1450 n.1 (10th Cir. 1995) ("[The defendant] also submitted his own briefs, but to the extent that he raises additional issues, we do not address them, invoking our policy of addressing on direct appeal only those issues raised by counsel."); *United States v. Guadalupe*, 979 F.2d 790, 795 (10th Cir. 1992) (denying the defendant's motion for leave to file a supplemental brief because he was "represented by thoroughly competent counsel"). To the extent Mr. Hildreth raises additional issues in this brief, we do not address them. We limit the following discussion to issues involving Mr. Hildreth's entrapment defense and the reasonableness of his sentence.

## II.  DISCUSSION

### A.    Entrapment as a Matter of Law

Mr. Hildreth claims he is entitled to a judgment of acquittal because undisputed evidence at trial established that he was entrapped as a matter of law. We review de novo a district court's denial of a motion for judgment of acquittal, "viewing all the evidence and drawing all reasonable inferences in the light most favorable to the government." *United States v. Garcia*, 182 F.3d 1165, 1168 (10th Cir. 1999). "Entrapment exists as a matter of law only if the evidence of entrapment is uncontradicted. In other words, entrapment as a matter of law exists only when there is undisputed testimony which shows conclusively and unmistakably that an otherwise innocent person was induced to commit the [criminal] act." *United States v. Nguyen*, 413 F.3d 1170, 1177–78 (10th Cir. 2005) (citations and quotations omitted) (alteration in original). Furthermore, "[w]hen a jury has found that no entrapment existed, we can alter that finding on legal grounds only

where the holding should be made without choosing between conflicting witnesses nor judging credibility." *Garcia*, 182 F.3d at 1168 (quotation omitted). We therefore ask "only whether sufficient evidence exists to support the jury's verdict." *Id.* (quotation omitted).

The entrapment defense has two elements: "first, government agents must have *induced* the defendant to commit the offense; and second, the defendant must not have been otherwise *predisposed* to commit the offense, given the opportunity." *Nguyen*, 413 F.3d at 1178. Once the defense is properly raised, the government must prove beyond a reasonable doubt that the defendant was not entrapped. *Id.* In the case before us, Mr. Hildreth focuses on the second element, arguing that the Government failed to introduce sufficient evidence of his predisposition to commit the offense. Predisposition is the "defendant's inclination to engage in the illegal activity for which he has been charged, i.e., that he is ready and willing to commit the crime." *Id.* (quotation omitted). The defendant's predisposition "may be shown by evidence of similar prior illegal acts or it may be inferred from [the] defendant's desire for profit, his eagerness to participate in the transaction, his ready response to the government's inducement offer, or his demonstrated knowledge or experience in the criminal activity." *Id.* (quotations omitted). Moreover, predisposition must "be viewed at the time the government agent first approached the defendant," but "inferences about that predisposition may be drawn from events occurring after the two parties came into contact." *Garcia*, 182 F.3d at 1169.

Contrary to Mr. Hildreth's argument, the record contains sufficient evidence that

he was predisposed to commit the offense. During Mr. Hildreth's meetings with Officer Stahl, he appeared eager to participate in the transaction. Even after he identified one of the weapons as an illegal machinegun, he offered to pay in cash for all the guns and urged Officer Stahl not to transport the guns back to Kansas City so that her brother-in-law could examine them. In addition, Officer Stahl testified that, before she gave Mr. Hildreth the guns, she asked him whether he was sure that he wanted *all* the guns and he responded affirmatively. A jury could also infer a desire for profit from the fact that Mr. Hildreth purchased a $14,000 machinegun for $600. Moreover, the Government introduced testimony at trial about an earlier transaction during which a different undercover government agent purchased a gun from Mr. Hildreth. The agent testified that Mr. Hildreth sold him a firearm and that, during the transaction, Mr. Hildreth demonstrated how the gun's trigger could be manipulated to make the gun function as a fully automatic weapon. The record also contains evidence that Mr. Hildreth had previously purchased and sold a firearm that he thought might be a machinegun at a gun show. In short, the Government presented evidence that Mr. Hildreth was predisposed to commit the crime. He was not therefore entrapped as a matter of law. *See United States v. Duran*, 133 F.3d 1324, 1335–36 (10th Cir. 1998) ("A defendant is not entitled to a claim of entrapment as a matter of law if the government has presented any evidence to contradict the entrapment defense.").

B.     Reasonableness of Mr. Hildreth's Sentence

The Government appeals the District Court's decision to sentence Mr. Hildreth to

three years' probation, a sentence below the applicable range under the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G."). The court determined that, under the advisory Guidelines, the applicable sentencing range was 27 to 33 months' imprisonment, based on an offense level 18 and a criminal history category I. After recognizing the applicable Guidelines range, the court exercised its discretion under *United States v. Booker*, 543 U.S. 220 (2005), to deviate from the Guidelines and impose a sentence of three years' probation.

We review the District Court's sentencing determination under a reasonableness standard, which is guided by the statutory factors delineated in 18 U.S.C. § 3553(a). *See United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). Reasonableness review has both "procedural and substantive components." *United States v. Atencio*, 476 F.3d 1099, 1102 (10th Cir. 2007). In other words, "the reasonableness standard of review set forth in *Booker* necessarily encompasses both the reasonableness of the length of the sentence, as well as the *method* by which the sentence was calculated." *Kristl*, 437 F.3d at 1055. To impose a procedurally reasonable sentence, "a district court must calculate the proper advisory Guidelines range and apply the factors set forth in § 3553(a)." *Atencio*, 476 F.3d at 1102.[2] "A substantively reasonable sentence ultimately reflects the gravity of the crime

---

[2]In addition, to impose a procedurally reasonable sentence outside the advisory Guidelines range, the court must explain the basis for its variance. *See Atencio*, 476 F.3d at 1106 ("Allowing a district court to vary or depart in the absence of such explanation would . . . hinder this court's ability to review the reasonableness of the variance."). We recently noted that, under 18 U.S.C. § 3553(c), a court imposing a sentence outside the Guidelines range must provide a more specific explanation than a court imposing a sentence within the Guidelines. *United States v. Ruiz-Terrazas*, 477 F.3d 1196,

and the § 3553(a) factors as applied to the case." *Id.* (citing *United States v. Cage*, 451 F.3d 585, 594 (10th Cir. 2006)). The Government does not challenge the sentence on procedural grounds, but argues instead that Mr. Hildreth's sentence is substantively unreasonable under our decision in *United States v. Cage*, 451 F.3d 585. In *Cage*, we explained that, when a district court imposes a sentence outside the Guidelines, the level of scrutiny we apply in reviewing the sentence depends on the "comparative difference" between the applicable range under the advisory Guidelines and the actual sentence imposed. *Id.* at 594; *see also United States v. Bishop*, 469 F.3d 896, 907 (10th Cir. 2006) ("In considering the discrepancy between the advisory guidelines range and the actual sentence, the comparative difference should guide our review." (quotation omitted)). In other words, the more a district court diverges from the advisory Guidelines range, the more "compelling" its reasons must be for that divergence. *United States v. Valtierra-Rojas*, 468 F.3d 1235, 1240 (10th Cir. 2006). The Government argues that the divergence in this case is analogous to the "extreme divergence" in *Cage*, in which the defendant received a sentence of six days' imprisonment, despite an applicable Guidelines range of 46 to 57 months. 451 F.3d at 594. We held that this kind of extreme divergence is reasonable "only under dramatic facts." *Id.*

Since our decision in *Cage*, we have recognized that "there is no formula into which we input the degree of divergence in order to generate precisely how compelling the district court's reasons need be," although "comparison with other cases is a useful

1199–1200 (10th Cir. 2007).

tool." *Valtierra-Rojas*, 468 F.3d at 1240. In addition to the divergence in *Cage*, we have held that a 471% upward deviation from a Guidelines maximum of 21 months to a sentence of 120 months' imprisonment is an extreme divergence. *United States v. Mateo*, 471 F.3d 1162, 1170 (10th Cir. 2006). By comparison to the divergence in *Cage,* we have held that a 33-month variance from a Guidelines maximum of 27 months to a sentence of 60 months (a 122% increase) is "substantial," rather than extreme, and therefore requires "compelling reasons," although "they need not be as 'dramatic'" as the reasons supporting an extreme divergence. *Valtierra-Rojas*, 468 F.3d at 1240. And we have described a 37% increase from a Guidelines maximum of 57 months to a sentence of 78 months as "a significant increase that requires sufficient explanation and justification." *Bishop*, 469 F.3d at 908.

Even though the actual sentence of probation in this case resembles the six-day prison sentence in *Cage*, the District Court deviated from a Guidelines minimum of 27 months, whereas the bottom of the applicable range in *Cage* was 46 months. Mindful that we look not only to the percentage of divergence, but also to the "absolute number of months above or below the Guidelines range," *Valtierra-Rojas*, 468 F.3d at 1240, we conclude that the divergence in this case is not extreme, but is nevertheless substantial. *See id.* (holding that a 33-month divergence was substantial rather than extreme even though it constituted a 122% increase from the high end of the applicable Guidelines range). *But see United States v. Likens*, 464 F.3d 823, 825 (8th Cir. 2006) (holding that a divergence from a Guidelines range of 15 to 21 months to a sentence of three years'

- 11 -

probation was an "extraordinary reduction" requiring "extraordinary circumstances");
*United States v. Ture*, 450 F.3d 352, 357 (8th Cir. 2006) (holding that a divergence from a Guidelines range of 12 to 18 months to two years' probation was an "extraordinary variance"). Because the variance in the case before us is substantial, the District Court's decision must be supported by "compelling reasons." *Valtierra-Rojas*, 468 F.3d at 1240.

In this case, the District Court justified the substantial variance on three grounds: (1) Mr. Hildreth was not involved in the ongoing conduct of buying, selling, or possessing machineguns; (2) he has a record of long-term employment enabling him to support himself and his family; and (3) he poses a low risk of danger to the public because he does not have a history of aggressive, violent, or non-compliant behavior. Although these are proper considerations under § 3553(a), *see* 18 U.S.C. § 3553(a)(1), (2)(A), (2)(C) (requiring the court to consider the nature and circumstances of the offense, the characteristics of the defendant, the seriousness of the offense, and the protection of the public), the Government argues that they are not enough to justify the court's decision and that, if the court had properly weighed other § 3553(a) factors, it would not have imposed a sentence below the applicable range. As we explain below, we agree that the court failed to justify its substantial divergence from the advisory Guidelines.

Although the sentencing Guidelines are now advisory, district courts must consider them in reaching sentencing decisions. *Booker*, 543 U.S. at 264 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."). As we have previously explained, the Guidelines are an

expression of "Congress's intentions in passing the sentencing laws." *Cage*, 451 F.3d at 593. Consequently, a district court may not "determine 'reasonableness' under § 3553(a) without reference to the fact that the Guidelines represent a critical advisory aspect of the § 3553(a) factors." *Id.* at 594. Moreover, a properly calculated Guidelines sentence will typically reflect an "accurate application of the factors listed in § 3553(a)," *id.* (quotation omitted), including "the need to avoid unwarranted sentencing disparities" under § 3553(a)(6), which we have noted is the purpose of the Guidelines, *see Kristl*, 437 F.3d at 1054 ("[T]he purpose of the Guidelines [is] to promote uniformity in sentencing so as to prevent vastly divergent sentences for offenders with similar criminal histories and offenses." (alteration in original) (quotation omitted)). Indeed, in recognizing the Guidelines' role in promoting uniformity in sentencing, we have held that a sentence within a properly calculated Guidelines range is entitled to a presumption of reasonableness. *See id.*

Here, the District Court essentially ignored the recommendation of the sentencing Guidelines. After determining that the facts of this case do not warrant a departure from the applicable sentencing range, the court concluded that a non-Guidelines sentence of three years' probation sufficiently satisfies the § 3553(a) criteria. But none of the court's reasons supports such a substantial divergence because the reasons do not distinguish Mr. Hildreth or his offense from the ordinary defendant upon which the Guidelines sentence is calculated. Mr. Hildreth's criminal history category under the Guidelines already accounts for the District Court's finding that he poses a low risk of danger to the public

due to his lack of an aggressive or violent history. Likewise, the fact that Mr. Hildreth does not seem to be engaged in ongoing criminal activity is already accounted for by the Guidelines. Under the Guidelines, uncharged conduct may serve as a basis for increasing the base level of a sentence, *see* U.S.S.G. § 5K2.21, but the *absence* of such conduct is not listed as grounds for a departure. This is because the base level for the offense under the Guidelines already reflects Congress's assessment of the seriousness of the offense absent unusual circumstances. Similarly, the fact that Mr. Hildreth is gainfully employed and supports his family financially is not out of the ordinary; indeed, as a matter of policy, the Guidelines discourage courts from considering family ties and responsibilities in sentencing decisions. U.S.S.G. § 5H1.6; *see also* 28 U.S.C. § 994(e) ("The Commission shall assure that the guidelines and policy statements . . . reflect the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant."); 18 U.S.C. § 3553(a)(5) (requiring a sentencing court to consider policy statements issued by the Sentencing Commission).

   In short, the court did not distinguish Mr. Hildreth from defendants with similar histories convicted of the same crime. *See Mateo*, 471 F.3d at 1169 (interpreting *Cage* to require a determination of "whether the particular characteristics of the defendant . . . are commonplace—and therefore presumably are already part of the Guidelines calculation—or are sufficiently uncommon to justify a divergence from the presumptively reasonable Guidelines sentence"); *see also, e.g., Bishop*, 469 F.3d at 908 (holding that a

- 14 -

significant divergence was reasonable when the district court analyzed the defendant's "individualized circumstances using the § 3553 factors" and "link[ed] the variance to the Guidelines themselves"); *Valtierra-Rojas*, 468 F.3d at 1242 (holding that an upward variance based in part on defendant's extensive history of alcohol abuse was reasonable because the Guidelines calculation did not adequately account for particular behavior). The District Court therefore impermissibly "abandon[ed] the tools provided by the advisory Guidelines" and "import[ed] its own philosophy of sentencing." *Bishop*, 469 F.3d at 909–10 (quotation and alterations omitted).

Moreover, although the court's reasons reflect a limited consideration of certain § 3553(a) factors, namely § 3553(a)(1), (2)(A), and (2)(C), the court's express disregard for one factor, § 3553(a)(6), renders its application of § 3553(a) unreasonable. *See* 18 U.S.C. § 3553(a)(6) (requiring a sentencing court to consider "the need to avoid unwarranted sentencing disparities among [similar] defendants"); *see also Cage*, 451 F.3d at 595 (explaining that the district court's application of particular § 3553(a) factors was unreasonable because of the "weight the district court placed on them"). As noted above, one of the primary purposes of the Guidelines is to promote uniformity in sentencing. *See Kristl*, 437 F.3d at 1054. Although the court recognized this purpose, it nonetheless refused to consider § 3553(a)(6), stating that the "problem with uniform[ity] in sentencing is we don't have uniform defendants." While this may be true, a substantial divergence from the Guidelines requires compelling reasons that distinguish the particular defendant and conduct at issue from the ordinary defendant contemplated by the advisory

Guidelines range. In this case, Mr. Hildreth's criminal history and characteristics, as well as the nature of the offense, were already part of the calculation of the sentence under the Guidelines. *See United States v. Shaw*, 471 F.3d 1136, 1141 (10th Cir. 2006) (noting that "an adjustment based on a factor that was already built into the guideline calculation may challenge the overall uniformity of sentences"). Hence, the court's substantial variance threatens to undermine uniformity in sentencing and does not accord adequate weight to the statutory factors under § 3553(a). We therefore conclude that Mr. Hildreth's sentence is unreasonable.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the District Court's decision denying the motion for judgment of acquittal, VACATE Mr. Hildreth's sentence, and REMAND for resentencing.