**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jacqueline Lorraine HOLTZ,**
**Defendant–Appellant.**

**No. 06–8058.**

United States Court of Appeals,
Tenth Circuit.

June 20, 2007.

---

James C. Anderson, Office of the United States Attorney, Cheyenne, WY, for Plaintiff–Appellee.

Ronald G. Pretty, Cheyenne, WY, for Defendant–Appellant.

Before HENRY, TYMKOVICH, and HOLMES, Circuit Judges.

## ORDER AND JUDGMENT\*

JEROME A. HOLMES, Circuit Judge.

Defendant–Appellant Jacqueline Lorraine Holtz pleaded guilty to possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). The district court sentenced her to 87 months' imprisonment and 10 years of supervised release. Ms. Holtz now challenges the reasonableness of her sentence. Our jurisdiction arises under 18 U.S.C. §§ 1291 and 3742, and we affirm.

## I. BACKGROUND

An investigation spearheaded by the Federal Bureau of Investigation ("FBI") revealed that a computer traced to Ms. Holtz's residence was used to disseminate child pornography. Thereafter, on December 10, 2003, the FBI executed a search warrant at the residence. During the search, the FBI interviewed Ms. Holtz, and she admitted to distributing and pos-

---

\* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

sessing child pornography. Ms. Holtz also confessed to serving as a moderator for several chat rooms where members traded images of child pornography. Ms. Holtz allowed the FBI to use her screen name to conduct additional online discussions, which led to arrests.

Ms. Holtz admitted to possessing "hard core" images of child pornography. R. vol. 4, Presentence Investigation Report ¶ 6 at 10. She informed the authorities she possessed a large number of images because she believed they provided her with a degree of control of the chat rooms by "having something that others wanted and did not have." *Id.* ¶ 5 at 8; *see id.* ¶ 18 at 11. On March 18, 2005, the government charged Ms. Holtz with one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). Ms. Holtz initially pleaded not guilty, but changed her plea after reaching a plea agreement with the government in which it agreed to recommend a three-level reduction in her offense level for acceptance of responsibility.

On March 3, 2006, Ms. Holtz pleaded guilty and the district court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR").[1] Re-flecting several adjustments under the U.S. Sentencing Guidelines ("Guidelines"),[2] the PSR recommended an offense level of 29. Because Ms. Holtz had no prior criminal record, the PSR placed her in Criminal History Category I. This resulted in an advisory Guidelines range of 87 to 108 months.

In April 2006, Ms. Holtz filed numerous objections to the PSR and the Probation Office responded. Then, just before the sentencing hearing in June 2006, Ms. Holtz submitted a sentencing memorandum in which she argued for a sentence below the advisory Guidelines range—specifically, a sentence of probation.

The district court held a sentencing hearing on June 19, 2006. Ms. Holtz informed the court that all of her PSR objections had been resolved save one, which concerned the PSR's use of Guidelines § 2G2.2, instead of § 2G2.4. The latter provision had a lower base offense level of 15 for child pornography possession offenses, but required the district court to apply § 2G2.2 when the offense conduct involved "trafficking in material involving the sexual exploitation of a minor (including receiving, transporting, shipping ... material involving the sexual exploitation

1. Ms. Holtz's offense of conviction occurred in December 2003. She did not appear before the district court for sentencing, however, until June 2006. Because of ex post facto concerns, the Probation Office did not use the November 2005 edition of the United States Sentencing Commission Guidelines Manual, which would have been in effect at that time, but instead used the November 2003 edition. R. vol. 4, *supra,* ¶ 15 at 10; *see* U.S.S.G. § 1B1.11(b)(1). Our Guidelines analysis is likewise predicated on the November 2003 edition.

2. Because the offense conduct involved trafficking in material involving the sexual exploitation of a minor, pursuant to the cross-reference of Guidelines § 2G2.4(c)(2), the Probation Office started with a base offense level of 17 under § 2G2.2. Then it added the following: two offense levels under § 2G2.2(b)(1) because the material at issue involved children under the age of twelve; five offense levels under § 2G2.2(b)(2)(B) for engaging in distribution for the receipt of, or in the expectation of receiving, a thing of value (although not for pecuniary gain); four offense levels under § 2G2.2(b)(3) for possession of images depicting sadistic conduct; two-offense levels under § 2G2.2(b)(5) for criminal conduct involving the use of a computer; and two offense levels under § 2G2.2(b)(6)(A) for her possession of between 10 and 150 images of child pornography. The Probation Office then calculated a three-offense level deduction for acceptance of responsibility under § 3E1.1.

of a minor)." U.S.S.G. § 2G2.4(c)(2). Ms. Holtz did not clearly articulate the basis for her objection, but maintained that the application of § 2G2.2 was improper.

During the sentencing hearing, Ms. Holtz asked the court for a below-Guidelines sentence based on the sexual abuse she suffered as a child and her cooperation with law enforcement in a separate drug trafficking investigation prior to her arrest for the current matter. Two witnesses testified to support these contentions. The first, a licensed clinical social worker treating Ms. Holtz, believed that Ms. Holtz's criminal conduct was "directly related" to the sexual abuse she suffered as a child. R. vol. 3, Tr. Sentencing Hearing at 13 (June 19, 2006). The second witness, a Wyoming police officer involved in the drug trafficking investigation, testified that the police paid Ms. Holtz to act as a confidential informant in their investigation, and her work led to convictions of several drug dealers.

Following the testimony, the district court adopted the PSR's recommended factual findings and declined to sentence Ms. Holtz below the advisory Guidelines range. It found that Ms. Holtz had in fact suffered from childhood sexual abuse, but determined that this circumstance was adequately taken into account by the Guidelines. The court questioned its authority to grant a below-Guidelines sentence based upon Ms. Holtz's cooperation with law enforcement without a substantial-assistance motion from the government (see U.S.S.G. § 5K1.1). However, the court noted that even if it had the authority, it would decline to grant such relief because the evidence did not warrant it.

The court sentenced Ms. Holtz to 87 months' imprisonment, the low end of the recommended Guidelines range, and further ordered her to serve a 10–year term of supervised release, and to pay a fine of $500 and a special assessment of $100. The court "strongly recommend[ed]" that the U.S. Bureau of Prisons permit Ms. Holtz to participate during her incarceration in a voluntary sexual offender treatment program at Butner, North Carolina. R. vol. 3, *supra,* at 68. Ms. Holtz timely appealed from this sentence.

## II. *DISCUSSION*

Following the Supreme Court decision in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), we apply a two-step analysis in reviewing a sentence for reasonableness: first, we must determine whether the sentence is procedurally reasonable; and, if so, whether the sentence is reasonable from a substantive perspective. *See, e.g., United States v. Kristl,* 437 F.3d 1050, 1055 (10th Cir.2006). "To impose a procedurally reasonable sentence, a district court must calculate the proper advisory Guidelines range *and* apply the factors set forth in § 3553(a)." *United States v. Hildreth,* 485 F.3d 1120, 1127 (10th Cir.2007) (internal quotation marks omitted and emphasis added; quoting *United States v. Atencio,* 476 F.3d 1099, 1102 (10th Cir.2007)). If we conclude that the sentence is procedurally reasonable, then it must be "considered presumptively reasonable from a substantive perspective." *United States v. McCullough,* 457 F.3d 1150, 1171 (10th Cir.2006) (citing *Kristl,* 437 F.3d at 1054–55).

Regarding our review for substantive reasonableness, we ask whether the defendant has demonstrated that the sentence is unreasonable in light of the sentencing factors identified in 18 U.S.C. § 3553(a). *See United States v. Cage,* 451 F.3d 585, 591 (10th Cir.2006) ("Even if a sentence is calculated properly, i.e., the Guidelines were properly applied and the district court clearly considered the § 3553(a) fac-

tors and explained its reasoning, a sentence can yet be unreasonable."). "A substantively reasonable sentence ultimately reflects the gravity of the crime and the § 3553(a) factors as applied to the case." *Atencio,* 476 F.3d at 1102.

Ms. Holtz appears to challenge both the procedural and substantive reasonableness of her sentence. Ms. Holtz does not present a legally cognizable attack on the district court's calculation of the advisory Guidelines range.[3] Ordinarily, a procedural-reasonableness challenge rests on such a basis. *See United States v. Hall,* 473 F.3d 1295, 1313 (10th Cir.2007) ("Ordinarily, any procedural irregularity in calculating a sentence occurs when the district court determines the applicable Guidelines range."). However, Ms. Holtz seems to contend that the district court ignored the § 3553(a) factors and effectively applied the Guidelines in a mandatory fashion.

In other words, Ms. Holtz essentially argues that the district court did not really "apply the factors set forth in § 3553(a)." *Hildreth,* 485 F.3d at 1127 (internal quotation marks omitted; quoting *Atencio,* 476 F.3d at 1102). For instance, Ms. Holtz

---

**3.** For the first time in her Reply Brief, Ms. Holtz questions the district court's calculation of the advisory Guidelines range. She argues that the district court improperly applied Guidelines § 2G2.2, instead of properly using § 2G2.4. In opaque fashion, Ms. Holtz challenged the use of § 2G2.2 before the district court. Now she alleges that the district court's use of this provision was error because the court based its decision to use it upon judicially-found facts, instead of facts found by a jury or admitted by Ms. Holtz—specifically, a factual finding that the offense involved trafficking in material involving the sexual exploitation of a minor. Ms. Holtz expressly predicates this argument on the Supreme Court's decision in *Cunningham v. California,* —— U.S. ——, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), which she contends makes "abundantly clear" that "this Circuit has totally misread and misinterpreted *Booker's* requirement as to increasing a sentence beyond the maximum [sic] could only be done by facts found by a Jury or admitted by the Defendant." Aplt. Reply Br. at 10.

The Supreme Court decided *Cunningham* after Ms. Holtz's Opening Brief was filed. However, *Cunningham* did not purport to announce a new rule of law; it simply applied the principles articulated in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Booker. See Cunningham,* 127 S.Ct. at 864 ("*Blakely* and *Booker* bear most closely on the question presented in this case."). Accordingly, the legal predicate for Ms. Holtz's challenge to the district court's computation of the Guidelines range was extant at the time she filed her Opening Brief. Therefore, it was incumbent upon Ms. Holtz to raise this challenge in that brief. "Failure to raise an issue in the opening appellate brief waives that issue." *United States v. Black,* 369 F.3d 1171, 1176 (10th Cir.2004); *see Silverton Snowmobile Club v. United States Forest Serv.,* 433 F.3d 772, 783 (10th Cir.2006). Ms. Holtz's approach has denied the government an opportunity to respond, and denied us the benefit of that response. *United States v. Gurule,* 461 F.3d 1238, 1249 (10th Cir.2006) ("Here, by raising the argument only in the reply brief, defendant has precluded the government from making a[n] ... argument on the facts of this case. The argument might have merit here as well."); *see also Planned Parenthood of Rocky Mountains Servs. Corp. v. Owens,* 287 F.3d 910, 927 n. 18 (10th Cir.2002). Accordingly, we need not consider Ms. Holtz's "late-blooming" objection to the calculation of the advisory Guidelines range. *Id.* Furthermore, even if we were to reach the merits of her objection, we would conclude that it is misguided. Nothing in *Cunningham* or the Supreme Court precedent upon which it relied barred the district court here from engaging in judicial-finding under an advisory Guidelines system and imposing a sentence upon Ms. Holtz within the relevant statutory maximum authorized by her guilty plea. *See United States v. Hurt,* 219 Fed.Appx. 784, 786–89 (10th Cir.2007) (unpublished) ("[J]udicial fact-finding under an advisory guideline system is perfectly permissible so long as supported by a preponderance of the evidence.... *Cunningham* does not impact our analysis in this case."); *see also Blakely,* 542 U.S. at 303–04, 124 S.Ct. 2531 (discussing the concept of "relevant statutory maximum").

asserts that the "mere fact that the [t]rial [c]ourt incarcerated [her] shows that the [c]ourt felt the Guidelines were mandatory versus advisory." Aplt. Opening Br. at 36–37; *see* Aplt. Reply Br. at 5 n. 3 (arguing that "this presiding Judge feels that the Guidelines are mandatory—no matter what the facts are"). We construe this argument regarding the district court's alleged mandatory application of the Guidelines as presenting a procedural-reasonableness challenge.[4] *Cf. United States v. Pruitt*, 487 F.3d 1298, 1305–08 (10th Cir. 2007) (where defendant "d[id] not challenge the district court's calculation of the Guidelines range," reviewing under the procedural-reasonableness rubric whether the district court "consider[ed] the sentencing factors set forth in ... § 3553(a)" as it "must").

Ms. Holtz also mounts an attack on the substantive reasonableness of the sentence—*viz.*, she challenges the length of the sentence itself. She argues that under the § 3553(a) factors her sentence of imprisonment was unreasonable and that a reasonable sentence would consist of "[p]robation with counseling, therapy and testing." Aplt. Opening Br. at 39. In this connection, Ms. Holtz questions the wisdom and applicability of our decision in *Kristl,* which established the presumption of substantive reasonableness for sentences deemed to be procedurally reasonable.

## A. *Procedural Reasonableness*

■ Ms. Holtz's contention that the district court essentially ignored the § 3553(a) factors and, in effect, applied the Guidelines in a mandatory fashion is clearly contradicted by the record. It shows that the district court was well versed in both the advisory nature of the Guidelines and its discretion in formulating the appropriate sentence. The court explicitly stated:

> The Court looks carefully at 18 United States Code 3553(a) factors and has the statute open on the bench and is reviewing them as I speak. I've considered the nature and circumstances of the offense and the need for the sentence to reflect the seriousness of the offense; before that, a deterrence to criminal conduct by this defendant and others; to protect the public from further crimes of this defendant; to provide her with the need of medical care and other correctional treatment because certainly she is in need of it; and the Court believes that the authors of the sentencing guidelines have taken those factors into account to a sufficient degree that I do not think I should exercise authority under *Booker* to depart.[5]

R. vol. 3, *supra,* at 56–57.

We therefore conclude that Ms. Holtz's contention regarding the district court's

---

4. We do not view the question presented here as one of *Booker* error *vel non*. Ms. Holtz does not allege that the district court was unaware of the advisory nature of the Guidelines; they took on that status more than 1½ years before she was sentenced. *See United States v. Gonzalez–Huerta*, 403 F.3d 727, 731 (10th Cir.2005) (en banc) (noting that "there are two distinct types of error that a court sentencing *prior to Booker* could make"—"constitutional" and "non-constitutional" error; both are triggered by "applying the Guidelines in a mandatory fashion" (emphasis added)). Rather, the essence of Ms.

Holtz's procedural challenge seems to be that in conducting its sentencing analysis the district court *effectively* rendered the Guidelines mandatory by ignoring or paying only lip service to the other § 3553(a) factors.

5. This circuit refers to a sentence below or above the advisory Guidelines range based on either Chapters Four or Five of the Guidelines as a "departure." *Atencio,* 476 F.3d at 1101 n. 1. When a court uses the § 3553(a) factors to formulate a sentence either above or below the advisory Guidelines range we refer to this adjustment as a "variance." *Id.* Although

allegedly mandatory application of the Guidelines is without merit and her sentence is procedurally reasonable.

## B. *Substantive Reasonableness*

■ Ms. Holtz contends that the district court's sentence of 87 months' imprisonment—the low end of the Guidelines range—is substantively unreasonable. We disagree.

Ms. Holtz bases her argument on the evidence that she presented in the sentencing hearing concerning her childhood sexual abuse. In light of this evidence, she contends that the district court should have imposed a sentence without imprisonment that provided for counseling and therapy. A sentence involving incarceration, says Ms. Holtz, is not "the best thing for the Appellant and/or society." Aplt. Opening Br. at 40.

The district court expressly considered Ms. Holtz's need for medical treatment in crafting her sentence. It stated:

> The Court looks carefully at 18 United States Code 3553(a) factors.... I've considered the need for the sentence ... to ... provide her with the need of medical care and other correctional treatment because certainly she is in need of it; and the court believes that the authors of the sentencing guidelines have taken those factors into account to a sufficient degree that I do not think I should exercise authority under *Booker* to depart.

R. vol. 3, *supra,* at 56–57. In fact, expressing its interest in Ms. Holtz's medical needs, the court "strongly" urged the Bureau of Prisons to permit her to participate in a voluntary sexual offender treatment program. *Id.* at 68. But, regarding a below-Guidelines sentence, the court simply concluded that the Sentencing Commission had factored into its calculus in establishing the advisory Guidelines range the kind of unfortunate circumstances alleged by Ms. Holtz.

Significantly, the district court directly addressed Ms. Holtz's argument that her childhood sexual abuse called for a sentence below the Guidelines range:

> The Court is invited to exercise its authority under *Booker* and establish a sentence that, as [defense] counsel urges, would be a more just sentence, considering the testimony of [the licensed social worker who treated Ms. Holtz]....
>
> ....
>
> The Court will accept as a fact that the defendant was abused at a young age by an adult male, and the Court's determination as to the application of the guidelines sentencing in this case does not diminish that conduct against her.
>
> But as the United States rightly points out, a substantial portion of those who are committed to the custody of the United States Bureau of Prisons facility at Butner, North Carolina, which is the facility chiefly responsible for treating people who commit sex crimes—a substantial portion of them have themselves, in their history, sexual abuse as a child, being sexually abused as a child.
>
> *There is nothing particularly out of the ordinary about this.* This is the typical kind of case presented to me

both the court and defense counsel made references to a "departure" during the course of the sentencing hearing, the hearing transcript makes clear that both the defense and the court recognized that the question for decision was whether Ms. Holtz was entitled to a variance. *See* R. vol. 3, *supra,* at 6 (where defense counsel answered in the affirmative to the following statement of the court: "But in point of fact, you're not asking me to depart, are you; you're asking me to exercise authority under *Booker?* ").

where a person claims that they have been sexually abused as a child. It's not uncommon. It's a routine problem for me to address.

*Id.* at 54–55 (emphasis added).

The district court's reasoning in denying Ms. Holtz's request for a downward variance based on childhood sexual abuse is consistent with our precedent. We have noted that "a properly calculated Guidelines sentence will typically reflect an accurate application of the factors listed in § 3553(a)." *Hildreth*, 485 F.3d at 1128 (internal quotation marks omitted; quoting, *Cage*, 451 F.3d at 594). Moreover, we have repeatedly held that nothing in *Booker* bars a district court from giving considerable weight to the Guidelines, which embody the expert judgment of the U.S. Sentencing Commission. *See United States v. Terrell*, 445 F.3d 1261, 1265 (10th Cir.2006) ("[W]e cannot say that a district court errs when it gives a high degree of weight to the Guidelines in its sentencing decisions.").

The record makes clear that, after hearing Ms. Holtz's evidence, the district court simply determined that it could not discern a reason to vary from the Guidelines range. That is, with regard to defendants convicted of possession of child pornography, the district court found there was "nothing particularly out of the ordinary" about Ms. Holtz's claim of childhood sexual abuse. *Id.* at 55. Ms. Holtz did not offer evidence to contradict this factual finding and it is not clearly erroneous.

Further, consistent with the logic of *Hildreth*, we perceive no error in the district court's related conclusion that the advisory Guidelines range contemplated the kind of sexual victimization alleged by Ms. Holtz. In considering the appropriateness of a variance under § 3553(a), *Hildreth* cautioned district courts not to discard "the tools provided by the advisory Guidelines."

*Hildreth*, 485 F.3d at 1129 (internal quotation marks omitted; quoting *United States v. Bishop*, 469 F.3d 896, 909–10 (10th Cir. 2006), *cert. denied*, —— U.S. ——, 127 S.Ct. 2973,—— L.Ed.2d —— (2007)). *See also United States v. Allen*, 488 F.3d 1244, 1253–54 (10th Cir.2007) (holding that it was unreasonable for the sentencing court, "in its exercise of *Booker* discretion, to disregard the relevant limiting principles found in the Guidelines").

In calling for a below-Guidelines sentence, Ms. Holtz referred to her "diminished capacity" resulting from the sexual abuse. *See* Aplt. Opening Br. at 27. Guidelines § 5K2.13, p.s. identifies "diminished capacity" as a possible ground for a downward departure. Significantly, however, this provision expressly discourages such downward departures where defendants have been convicted of offenses under chapter 110 of title 18 of the U.S.Code. Ms. Holtz's offense of conviction is found in chapter 110. More generally, the Sentencing Commission has limited the grounds for which Guidelines departures are available for those offenders convicted of child sexual crimes, including possession of child pornography. *See* U.S.S.G. § 5K2.0(b). Accordingly, the district court could reasonably conclude that, in setting the sentencing range for those involved in possession or distribution of child pornography, the Guidelines took into account the kind of childhood sexual abuse alleged by Ms. Holtz.

Furthermore, the district court recognized its duty to balance Ms. Holtz's claim of childhood sexual abuse and her resulting need for medical treatment with the other § 3553(a) factors, including the seriousness of the offense. Ms. Holtz engaged in serious criminal activity. Possession of child pornography is not a victimless crime. *See United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir.2005)

("[P]ossession of child pornography is not a victimless crime. A child somewhere was used to produce the images download-ed....").[6]

Finally, as part of her substantive attack, Ms. Holtz questions the applicability and appropriateness of this circuit's pre-sumption-of-reasonableness standard which was first announced in *Kristl*. As Ms. Holtz concedes (*see* Aplt. Opening Br. at 37), *Kristl* is controlling authority and this panel is not empowered to overrule it. *See United States v. Pruitt*, 487 F.3d at 1301–03 (noting that we have "expressly rejected" the argument that "according a Guidelines-range sentence a presumption of reasonableness violates" *Booker*). Moreover, the fact that *Kristl* involved a different scenario—i.e., a sentencing challenge solely based upon alleged Guidelines computation errors—is irrelevant. The *Kristl* framework has been repeatedly applied by our court in various factual settings, including cases where only the substantive reasonableness of the sentence was at issue. *See, e.g., Hildreth*, 485 F.3d at 1126–28 (addressing only substantive

reasonableness under the *Kristl* analytic framework and reviewing our cases doing the same).

## III. CONCLUSION

In sum, we conclude that the district court's sentence is procedurally reasonable and that the 87 month sentence is substantively reasonable under the factors identified in 18 U.S.C. § 3553(a). Consistent with our precedent, we reach the latter conclusion by applying a presumption of reasonableness to the advisory Guidelines range. However, under these facts, even absent this presumption, we would hold with no difficulty that Ms. Holtz's sentence is substantively reasonable.

The district court's sentencing order is **AFFIRMED.**

---

**6.** The district court directly addressed this point: "Possession of child pornography is a serious matter. It's not just the possessing of it; it's what is done to innocent victims worldwide in order to allow adults to know-

ingly possess it." R. vol. 3, *supra,* at 9; *see also id.* at 56 ("The fact of the matter is, little girls were victimized for the purpose of giving the other adults gratification at their victim-ization.").