**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 5, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ERICK OROZCO,

Defendant-Appellant.

No. 06-6278
(D.C. No. CR-04-179-R)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

Appellant Erick Orozco appeals his conviction and sentence on one count of conspiracy to commit money laundering. He argues that (1) there was insufficient evidence of his involvement in the conspiracy; and (2) his sentence was erroneously calculated, unreasonable, and in violation of *United States v. Booker*, 543 U.S. 220 (2005). We affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

In 2004, Mr. Orozco was charged in a superceding indictment with two counts: (1) conspiracy to distribute, and to possess with intent to distribute, 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846; and (2) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956. He pleaded not guilty.

At trial, the evidence introduced during the government's case-in-chief showed the following. In the summer of 2003, Oklahoma City police received information that Dennis Gonzalez, "a member of the Compton Varrio Tortilla Flats gang out of California," R., Vol. 6 at 27, was importing "ice methamphetamine[ ] into Oklahoma City," *id.* at 16. Eduardo Verduzco helped run the operation and Jennifer Lujan acted as Gonzalez's "No. 1 seller." *Id.*, Vol. 8 at 361.

Police conducted warrant-based searches of Lujan's residence and an apartment occupied by Verduzco in Oklahoma City, finding methamphetamine consistent with "a larger-scale narcotics dealer," *id.*, Vol. 6 at 47, narcotics-packaging and -weighing instruments, and a notebook belonging to Verduzco. The notebook contained "a running ledger of who owes what," *id.* at 92, "an expenses sheet," *id.* at 95, and references to amounts of methamphetamine. Appellant Erick Orozco's name appeared several times throughout the notebook,

indicating that various monetary "amounts for methamphetamine were owed to Mr. Orozco." *Id.*, Vol. 8 at 325.

Further investigation revealed that, from October 2002 to June 2003, Gonzalez and his associates wired funds from Oklahoma City to Mr. Orozco in California twenty-six times for a total of $33,764.99. The funds were wired under fictitious names and in amounts that required minimal or no identification. Mr. Orozco received the wires, supplying fourteen different telephone numbers and ten different addresses. None of the addresses matched the one listed on his driver's license and five addresses did not exist at all. According to a special agent in the Internal Revenue Service's criminal-investigation division, Gonzalez had no legitimate source of income that could have accounted for the money wired to Mr. Orozco.

Lujan testified for the government that on an occasion in which she complained to Gonzalez about the quality of a methamphetamine shipment, Gonzalez directed her to tell Mr. Orozco. Two other witnesses, Vikki Cerda and Bryan Friedman, testified that Lujan told them that Mr. Orozco was supplying methamphetamine for the operation.[1]

---

[1]    Mr. Orozco objects to our considering Cerda's testimony that Lujan identified him as a methamphetamine supplier. He asserts that Cerda's testimony "is inadmissible hearsay and should never have been presented to the jury." Aplt. Br. at 36. But he did not object during trial. R., Vol. 7 at 175. And he does not offer any specific argument against the district court's pretrial ruling admitting co-conspirator statements under Fed. R. Evid. 801(d)(2)(E), *see* R., Vol. 4 at 26.

(continued...)

-3-

After unsuccessfully moving for a judgment of acquittal, Mr. Orozco testified in his own defense. He admitted that (1) he knew the money was coming from Gonzalez, notwithstanding the different names used to send the wires; and (2) he provided "false addresses and false phone numbers" to receive the wires, *id.*, Vol. 9 at 424. But Mr. Orozco disputed any involvement in a conspiracy, and he claimed that the money wired to him was in payment of a debt Gonzalez owed to Mr. Orozco's deceased brother.

The jury could not reach a verdict on the drug-trafficking conspiracy count, prompting the district court to declare a mistrial on that count and to dismiss it without prejudice. But the jury did find Mr. Orozco guilty of conspiring to commit money laundering.

The United States Probation Office prepared a presentence investigation report (PSR), calculating Mr. Orozco's base-offense level by converting the amount of the laundered funds into an equivalent value of methamphetamine and then selecting the appropriate number, thirty-four, from U.S.S.G. § 2D1.1's drug-quantity table. Two-levels were added under § 2S1.1(b)(2)(B) for engaging in money laundering. Based on the resulting thirty-six level offense and a category-four criminal history, the guideline for imprisonment was 262 to 327

---

[1](...continued)
Consequently, Mr. Orozco's objection on appeal is waived. *See United States v. Porter*, 405 F.3d 1136, 1144 (10th Cir. 2005).

months.  The PSR noted, however, that there was a 240-month statutory maximum.  *See* 18 U.S.C. § 1956(a)(1) & (h).

At the sentencing hearing, Mr. Orozco objected to the calculation of his base-offense level using any quantity of methamphetamine because the jury did not convict him of the drug-trafficking conspiracy, and he sought to downplay his criminal history, stating that he grew up in "a ghetto" and "was pushed into gang activities," but "didn't get involved in gangs."  R., Vol. 3 at 15.  The district court followed the PSR and sentenced Mr. Orozco to 240 months.  In doing so, the district court found that Mr. Orozco was involved in Gonzalez's drug-trafficking operation and that he knew the wired funds came from that operation.  The district court also recognized the Guidelines' advisory nature, declared that it had considered the 18 U.S.C. § 3553(a) factors,[2] and concluded, "I think the [G]uidelines, particularly considering this defendant's criminal history, are appropriate."  R., Vol. 3 at 16.  Mr. Orozco appealed.

---

[2]     The 18 U.S.C. § 3553(a) factors include (1) the nature of the crime and the characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the crime, deter criminal conduct, protect the public, and provide the defendant with needed training or treatment; (3) the kinds of available sentences; (4) the sentencing range under the advisory Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid sentencing disparities among similar defendants; and (7) the need to provide restitution to any victims of the crime.

## DISCUSSION

### I. Sufficiency of the Evidence

Mr. Orozco argues that the government did not present sufficient evidence for the jury to find him guilty of conspiracy to commit money laundering. In reviewing for sufficiency of the evidence, we "view[ ] the evidence in the light most favorable to the government," and "[w]e will reverse a conviction only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Willis*, 476 F.3d 1121, 1124 (10th Cir.) (quotation omitted), *cert. denied*, 127 S. Ct. 3025 (2007).

The elements of money laundering are met if an individual conducts a financial transaction, such as moving funds by wire through interstate commerce, knowing that the funds are the proceeds of unlawful activity, and with the intent, as charged in this case, to promote the unlawful activity or to conceal the funds' unlawful source. 18 U.S.C. § 1956(a)(1). A conviction for conspiracy to commit money laundering requires proof of (1) an agreement with another person to commit money laundering; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary participation; and (4) interdependence among the alleged co-conspirators. *United States v. Chavis*, 461 F.3d 1201, 1208 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 2062 (2007).

Mr. Orozco contends that the government failed to prove his knowledge of the conspiracy's objectives. We disagree. As noted above, the government

charged a dual objective money-laundering conspiracy: promoting further drug

trafficking and concealing drug proceeds. Regarding the promotion objective,

there was ample evidence that Mr. Orozco supplied Gonzalez with

methamphetamine and received numerous wires of money in connection with his

supplying activities. Evidence of this arrangement, which shows that Gonzalez

and Mr. Orozco shared the common goal of trafficking in methamphetamine, was

sufficient to establish Mr. Orozco's knowledge of the conspiracy's promotion

objective. *See United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006)

("To prove knowledge of the essential objectives of a conspiracy, the

government . . . only needs to demonstrate the defendant shared a common

purpose or design with his alleged coconspirators." (quotation and citation

omitted)). As for the conspiracy's concealment objective, we find the subterfuge

employed by Mr. Orozco in receiving the wired funds, together with his

awareness that Gonzalez was wiring the funds using fake names, sufficient to

prove Mr. Orozco's knowledge that an objective of the conspiracy was to conceal

the funds' source.[3]

---

[3] Mr. Orozco devotes no discussion to support his further assertion that the government "failed to prove that he *voluntarily* became part of th[e] conspiracy." Aplt. Br. at 32 (emphasis added). Consequently, we do not consider it. *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004). Nor do we dwell extensively on Mr. Orozco's cursory suggestion that he was an unknowing participant in the conspiracy. A "defendant's participation in or connection to the conspiracy need only be slight" and may be presumed when the defendant acts in furtherance of the conspiracy's objectives. *United States v. Johnston*, 146 F.3d

(continued...)

Additionally, we reject Mr. Orozco's argument that the jury's failure to reach a verdict on the drug-trafficking conspiracy count is somehow inconsistent with there being sufficient evidence to support the guilty verdict on the money-laundering conspiracy count. Because Mr. Orozco was not acquitted by the jury for the drug conspiracy and that count was dismissed without prejudice, there does not appear to be any inconsistency. *See United States v. Harris*, 369 F.3d 1157, 1168 (10th Cir. 2004). In any event, "[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." *United States v. Powell*, 469 U.S. 57, 62 (1984) (quotation omitted).

We conclude that there was sufficient evidence to support Mr. Orozco's conviction for conspiracy to commit money laundering.

## II.  Sentencing

"We review the District Court's sentencing determination under a reasonableness standard, which is guided by the statutory factors delineated in 18 U.S.C. § 3553(a)." *United States v. Hildreth*, 485 F.3d 1120, 1127 (10th Cir. 2007). Reasonableness is assessed both procedurally and substantively. *Id.*

---

[3](...continued)
785, 789 (10th Cir. 1998). For many of the same reasons listed in our discussion concerning Mr. Orozco's awareness of the conspiracy's objectives, we conclude that there was sufficient evidence that he knowingly participated in the conspiracy.

*A. Procedural Reasonableness*

"To impose a procedurally reasonable sentence, a district court must calculate the proper advisory Guidelines range and apply the factors set forth in § 3553(a)." *Id.* (quotation omitted). We review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Townley*, 472 F.3d 1267, 1275-76 (10th Cir.), *cert. denied*, 127 S. Ct. 3069 (2007). An error is clear if, based "on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." *United States v. Wilfong*, 475 F.3d 1214, 1218 (10th Cir. 2007) (quotation omitted).

Mr. Orozco first challenges the calculation of his base-offense level under the Sentencing Guidelines. The offense level for a money-laundering conspiracy is the same level used for "the underlying offense from which the laundered funds were derived," so long as (1) the defendant either committed the underlying offense or is accountable for the underlying offense through relevant conduct[4] and (2) the underlying offense level is ascertainable. U.S.S.G. § 2S1.1(a)(1). Mr. Orozco argues that the district court erred in using this provision because the first condition was not met. Specifically, he claims that there was insufficient evidence to hold him accountable for the trafficking of

---

[4]     Relevant conduct generally includes all acts and omissions committed by the defendant and his confederates "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1).

methamphetamine, as demonstrated by the jury's inability to reach a verdict on the trafficking-conspiracy count. We disagree. Given the evidence that Mr. Orozco acted as a methamphetamine supplier for Gonzalez, the district court's finding that Mr. Orozco was involved in the drug-trafficking operation was not clearly erroneous and supports § 2S1.1(a)(1)'s application. *See id.* § 2S1.1 cmt. 2(B) (indicating that a defendant's laundering of criminally derived funds during involvement in the underlying offense renders the defendant accountable for the underlying offense). The jury's inability to reach a verdict is irrelevant, because the district court could have considered Mr. Orozco's involvement even if the jury had acquitted him. *See United States v. Watts*, 519 U.S. 148, 152, 153-54 (1997) (stating that sentencing courts must consider all relevant conduct, "whether or not it resulted in a conviction").

Mr. Orozco next contends that "[t]he district court relied solely on the Sentencing Guidelines to impose a 240-month sentence . . . and did not consider the factors enumerated in 18 U.S.C. § 3553(a) at the sentencing hearing." Aplt. Br. at 46. Because he did not make a corresponding objection at the hearing, we review only for plain error. *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199 (10th Cir.), *petition for cert. filed* (U.S. May 24, 2007) (No. 06-11540). "Plain error occurs when there is (i) error, (ii) that is plain, which (iii) affects the defendant's substantial rights, and which (iv) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

Contrary to Mr. Orozco's assertion, the district court explicitly stated at the sentencing hearing that it had considered the § 3553(a) factors, including his criminal history. R., Vol. 3 at 16. It only neglected to recite its consideration on the record, which is not error, let alone plain error, given that the sentence imposed was properly calculated under the Guidelines, albeit subject to a statutory cap below the Guidelines. *See Ruiz-Terrazas*, 477 F.3d at 1202 (noting that "a specific discussion of [s]ection 3553(a) factors is not required for sentences falling within the ranges suggested by the Guidelines"); *see also Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) (stating that "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation"); *United States v. Johnson*, 445 F.3d 793, 798 (5th Cir.) (concluding that "where the statutory maximum is lower than a properly-calculated guidelines range, a statutory maximum sentence is functionally equivalent to a sentence within the guidelines"), *cert. denied*, 126 S. Ct. 2884 (2006).

## B. Substantive Reasonableness

Mr. Orozco next argues that his 240-month sentence was unreasonably long. The sentence is presumptively reasonable, however, as it was statutorily capped below a properly calculated advisory Guidelines range. *See Hildreth*, 485 F.3d at 1129 (recognizing that a properly calculated Guidelines sentence is presumed reasonable); *Johnson*, 445 F.3d at 798 (extending the reasonableness

presumption "to statutory maximum sentences where that maximum falls below the appropriate guidelines range"); *United States v. Shafer*, 438 F.3d 1225, 1227 (8th Cir. 2006) (same). Mr. Orozco offers nothing to rebut that presumption other than his assertion that there was insufficient evidence of his involvement in drug trafficking, which we rejected above, and his claim that the district court punished him for being a gang member, which is completely unsupported by the sentencing-hearing transcript. We conclude that Mr. Orozco's sentence is not substantively unreasonable.

## *C. Booker*

In *United States v. Booker*, the Supreme Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. 220, 244 (2005). Mr. Orozco argues that the district court violated *Booker* by finding that he was accountable for methamphetamine distribution, even though the jury did not reach a verdict on the distribution-conspiracy count and he did not admit involvement in drug trafficking. This argument was not raised below. In any event, "because the district court did not consider the guidelines mandatory, there was no *Booker* error." *United States v. Visinaiz*, 428 F.3d 1300, 1315 (10th Cir. 2005), *cert. denied*, 546 U.S. 1123 (2006); *see also United States v. Townley*, 472 F.3d

-12-

1267, 1276 (10th Cir.) ("Appellant incorrectly argues that *Booker* error occurs any time a district court enhances a sentence based on facts not found by a jury. Rather, after *Booker*, a district court is not precluded from relying on judge-found facts in determining the applicable Guidelines range so long as the Guidelines are considered as advisory rather than mandatory."), *cert. denied*, 127 S. Ct. 3069 (2007).

## CONCLUSION

The judgment and sentence of the district court are AFFIRMED.

Entered for the Court

John C. Porfilio
Circuit Judge